[Civ. No. 202.    Third Appellate District.—May 15, 1906.]

## JAMES E. CONDE et al., Respondents, v. DREISAM GOLD MINING COMPANY et al., Appellants.

MORTGAGE—ASSIGNMENT AS COLLATERAL SECURITY—FORECLOSURE BY
ASSIGNORS—EVIDENCE—PAYMENT OF PRINCIPAL—AGREEMENT AS
TO INTEREST.—Where a mortgage had been assigned by two of
three mortgagees as collateral security for their note, payable
within one year with interest, under an agreement that the mort-
gagor would pay the interest on the note collaterally secured, and
that none should be charged against the the assignors, in an action
to foreclose the. mortgage, after payment of the principal of the
note so secured, testimony of the agent of the assignee that the
assignors were not to pay any interest, not objected to by the
assignee, made a party defendant, could not be prejudicial to the
mortgagor.

ID.—IMMATERIAL EVIDENCE—EXTENSION OF TIME—LAPSE OF TIME.—
Where there was no formal extension of time for the payment of
the note and mortgage, and the evidence was conflicting as to
whether it was agreed that the note collaterally secured thereby, and
payable within one year, could be paid at any time, any evidence on
the part of the mortgagor that the time of payment of the note and
mortgage was extended for one year was immaterial, where it
appeared that more than one year had elapsed before the fore-
closure of the mortgage.

ID.—PAYMENT OF PRINCIPAL BY DRAFT—RECEIPT AND HOLDING BY
AGENT—ABSENCE OF NOTICE.—Where, before the lapse of the year,
the assignors sent a draft, in favor of the owner of the note col-
laterally secured, to the authorized agent of such owner, for the
principal sum, and demanded a return of the note and mortgage,
and such agent retained the draft till the end of the year, and
did not notify the debtors that it would not be accepted in pay-
ment of the note, and before the foreclosure suit was brought,
the draft was available to pay the note, it must be deemed, under
the circumstances, that the draft constitutes a payment in full
of the note collaterally secured, and that the mortgagees were
entitled to foreclose the mortgage.

ID.—RULE AS TO CONDITIONAL PAYMENT—CIRCUMSTANCES SHOWING
ABSOLUTE · PAYMENT—ESTOPPEL—UNREA'SONABLE DELAY.—The gen-
eral rule that a check or draft is conditional payment, unless
otherwise agreed, does not require that there should be express
words or a writing of the parties agreeing that the same should be
absolute payment.  The circumstances and conduct of the parties,

taken together, may show an express understanding that it was taken in satisfaction of the debt, or estop the creditor from claiming the contrary. Unreasonable delay in returning it may make it equal to payment.

Id.—Joinder of Mortgagees with Administrator of Deceased Mortgagee—Absence of Special Demurrer.—In the absence of a special demurrer, no objection can be raised upon appeal to the joinder of the two living mortgagees with the administrator of a deceased mortgagee in the foreclosure of the mortgage.

Id.—Construction of Code—Presumption of Joint Ownership—Interest in Common.—Section 1431 of the Civil Code, raising a presumption of joint ownership of a right created in several persons, does not purport to determine the interest of the parties as between themselves, which is made a tenancy in common by section 686 of that code, unles declared in its creation to be a joint interest.

Id.—Presumption Overcome—Ownership by Deceased of Half Interest—Absence of Survivorship.—If the presumption of joint ownership should attach, it was overcome so as to destroy any right of survivorship, where it appears in proof that the deceased was the owner of a half interest in the note and mortgage.

Id.—Joinder of Persons Interested.—When two or more persons are jointly interested in the money secured by a mortgage, according to the law prevailing in this country, they must all unite in foreclosing it.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. George W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. J. Roche, for Appellant Company.

Benjamin Henley, for Appellant Moulton.

J. F. Rooney, and Fred Fette, Jr., for Respondents.

CHIPMAN, P. J.—Foreclosure of mortgage executed by defendant company to plaintiffs, the Condes and Leonardini, deceased, in his lifetime, to secure the payment of a certain promissory note for the sum of $9,000, payable to them and made by defendant company.

Plaintiffs had judgment, from which and from the order denying their motion for new trial defendants appeal.

The court found the following facts: That on May 24, 1899, defendant company executed the note and mortgage in question, payable thirty days after date.   James E. Conde's intestate died December 1, 1900, and on March 15, 1902, said Conde was duly appointed administrator of Leonardini's estate; on March 9, 1901, plaintiffs, James E. and Mary K., his wife, borrowed from defendant Mrs. Moulton the sum of $1,500, and executed and delivered to her their promissory note therefor, payable one year after date, with interest at seven per cent per annum, and to secure the payment of the same assigned to her the said promissory note and mortgage first above mentioned; on October 5, 1901, the said Condes paid in full to defendant Moulton the said promissory note for $1,500, and demanded that she execute to them a reassignment of said promissory note and mortgage executed by defendant company, but she neglected and failed to do so. The court further found that defendant Moulton had at the commencement of the suit no right or interest in or to said promissory note and mortgage so assigned to her as security and that plaintiffs are the lawful owners thereof, on which there is due and unpaid the sum of $6,460, with interest from June 24, 1899; that the estate of Leonardini is the owner of one-half the amount of said promissory note and mortgage. The conclusions of law were such as logically followed the facts found, and judgment passed accordingly.

The errors alleged as grounds of the appeal arise out of a rather unusual state of facts not fully disclosed by the findings.   It appears that Benjamin Healey was the attorney and general agent of Mrs. Moulton and authorized to act for her as fully as she could act for herself in the matters in controversy.   He was also a director and large stockholder in defendant company and was its attorney at the time mentioned in the transactions involved.   In March, 1901, the Condes found themselves in need of money and went to San Francisco to see if they could not induce the defendant company to pay its note or some part of it then long past due; they went to Mr. Healey as representing the company and made known their desire to get at least $3,000; after some delay and some inquiry on his part he informed them that

the company could pay them no money, but that he had a client, a Mrs. Moulton, who would let them have $1,500, which would tide them over for the present; the Condes were threatening foreclosure of the company mortgage and Healey was anxious to avoid that and wanted further time; the Condes refused, according to their testimony, to agree to abstain from foreclosing or granting further time, as that would require the execution of new papers; Leonardini was then deceased and as yet no administrator of his estate had been appointed. The upshot of the matter was the giving by the Condes of the $1,500 note, secured, as found by the court, but it was understood between them and Mr. Healey that they were to pay no interest, which latter was to be paid by the company, and the company did by resolution authorize its payment. It was further understood, according to Conde's testimony, that they might pay the $1,500 note at any time. They returned to their home, and on October 3, 1901, they sent to Mr. Healey for Mrs. Moulton, by their attorney, Mr. Rogers, the draft of the Tuolumne County Bank drawn on the Western National Bank of San Francisco for the sum of $1,500, payable to the order of Mary S. Moulton, which Mr. Rogers stated was in payment of her note, and to meet this draft the Condes deposited with the Tuolumne County Bank this amount, which they never after withdrew. Mr. Rogers also sent Mr. Healey a blank reassignment of the company note and mortgage and requested its execution and return to him with the $1,500 note. Mr. Healey received the draft on October 5th, but failing to acknowledge its receipt, Mr. Rogers wrote him October 21, 1901, calling attention to the matter. On October 25, 1901, Mr. Healey wrote Mr. Rogers, acknowledging the receipt of the draft and blank assignment, and stated that Mrs. Moulton was out of town and on her return he would write Rogers. He informed Mrs. Moulton of the draft and talked the matter over with her, but for some unexplained reason Mr. Healey communicated no further, so far as the record shows with Mr. Rogers or with plaintiff's, but retained the draft, without, however, presenting it for payment, and on March 18, 1902, more than one year after the Conde note was given to Mrs. Moulton, plaintiffs commenced this action to foreclose the company mortgage. Mrs. Moulton was made a party defendant, presumably because

she still had possession of the company note and mortgage and was claiming some interest in it. Mr. Healey testified in explanation of the loan by Mrs. Moulton to the Condes as follows: "One object I had then, in furnishing the loan of $1,500 from Mrs. Moulton, so the company could have further time to pay the mortgage, and I bound Mr. Conde certainly in my own mind that he could not foreclose inside of twelve months. I had two motives—one to befriend Mr. Conde and the other to befriend the Dreisam Gold Mining Company, of which I was a director and attorney, otherwise I would not have acted as I did." He testified that the Condes were to pay no interest, and the only material conflict in the testimony was as to the agreement to defer foreclosure of the company mortgage. When pressed to explain why he retained the draft and did not return it if he did not propose to apply it in payment of the Moulton note, he replied that he could not explain with due consideration for Mr. Rogers, who had died. "Q. You kept it in your possession from October till this day? A. I did not keep it in that sense; it was in my possession; I had it in my possession all the time from the time I got it until I brought it into court (at the then trial). Q. You never said a word to Mr. Conde about returning it, or offered to return it? A. I object to answering that question, on the ground the conversation in regard to that matter occurred with a gentleman now passed away." He also declined to answer whether he had ever offered to return the draft to Mr. Rogers. Being further pressed for an answer the extent of his reply was: "I have had the check in my possession up to this time; I had no legal duty to perform in returning that check. . . . I considered the security Mrs. Moulton had for the loan of $1,500 was good; . . . I was not anxious about Mrs. Moulton getting her money back; it was not due; we didn't want it. . . . I was acting for the Dreisam Mining Company in this transaction, and it was for its benefit that this transaction occurred." Mr. Roche, attorney for the company, objected to the evidence of an agreement that the Condes were to pay no interest on the Moulton note. Mrs. Moulton's agent and attorney testified to the fact and made no objection to the evidence. We cannot see of what concern the question was to the company, or, conceding error, how it was injured by the evidence, and without injury there can be

no prejudicial error.   Nor can we see how either of the defend-
ants was injured by the testimony as to any agreement to
defer foreclosure until the time named in the Moulton note
had expired, which was one year.   The foreclosure suit was
commenced, March 18, 1902, more than one year after the
Moulton note was given.   So that every object Mr. Healey
had in "befriending" the Condes and the company had been
accomplished and the Condes kept faith with Mr. Healey's
understanding of the agreement.   When this action was
brought the Moulton note was past due and the draft in Mrs.
Moulton's hands was available to pay it and had been for five
months.   Mr. Healey brought it into court and after the
trial obtained leave to withdraw it, indicating that he then,
as well as theretofore, expected to make use of it for payment
in his own time.   Inasmuch as he refused to explain why he
retained the draft, or why he did not notify the Condes or
Rogers of his unwillingness to accept it as payment we can
only surmise that he wanted the note to run the full year
for Mrs. Moulton's benefit, as he regarded the loan as a safe
and good one for her.   Under all the facts and circumstances
disclosed, we think that the draft constituted a payment and
that the court was justified in finding that the Moulton note
was fully paid.   If the drawer and drawee of the draft should
fail before its presentation, after so great lapse of time, it
would hardly be contended that Mrs. Moulton could come back
upon the Condes.

It is claimed that there was no legal duty on Mr. Healey
to return the draft; citing section 1505, Civil Code, which
provides that "If anything is given to a creditor by way of
performance which he refuses to accept as such, he is not
bound to return it without demand."   But in this instance
the creditor did not refuse to accept the draft by way of per-
formance.   Unless the draft was refused the duty was on the
creditor to return it.   Instead of doing so her conduct indi-
cated its acceptance.

It is further claimed that a draft or check is only condi-
tional and not absolute payment of the debt for which it is
given and does not extinguish the debt unless it is expressly
agreed that it shall constitute payment.   This is undoubtedly
the rule in this state.   (*Comptoir d'Escompte* v. *Dresbach,* 78
Cal. 15, [20 Pac. 28] ; *Dingley* v. *McDonald,* 124 Cal. 90, [56

Pac. 790].) But the purpose of the rule is the protection of the creditor, who, if the check be dishonored, may still recover from his debtor. It is said in *Blair* v. *Wilson,* 28 Gratt. 165: "Ordinarily it is only a means of payment, and the debt will not be extinguished unless the check be paid, or unless loss be sustained by the drawer in consequence of the laches of the holder, in which case the debt will be discharged in proportion to the loss sustained. If the check be not paid, and the payee is without fault, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer, either upon the debt or upon the check, at his option." Mr. Benjamin thus states the rule: "A check is accepted as a particular form of cash payment, and if dishonored, the vendor may resort to his original claim, on the ground that there has been a defeasance of the condition on which it was taken." (Benjamin on Sales, 7th ed., pp. 755, 772.) We do not, however, understand the rule to require that there should be express words or writing of the parties agreeing that the check should be absolute payment. The circumstances and the conduct of the parties taken together may show an express understanding that the check is taken in satisfaction of the debt or estop the creditor from claiming the contrary. As here, for example, the check was sent for the express purpose of payment and was retained under circumstances implying that it was so accepted. It has been held that unreasonable delay in returning a check may make it equal to payment. (*Smith* v. *Miller,* 43 N. Y. 171, [3 Am. Rep. 690]; *Mehlberg* v. *Tisher,* 24 Wis. 607.)

So far as the company is concerned it has nothing to do with the draft; is in no wise interested in it or in any question arising out of it. Its sole concern is in the right of plaintiffs to bring the action to foreclose their mortgage. Upon this branch of the case but one point is made deserving notice and this goes not to the merit of the case but to a technical rule of pleading. The contention is that the company note was owned jointly by James E. Conde, Mary K. Conde and Luigi Leonardini, and upon the death of Leonardini the cause of action did not pass to his representatives but vested in the other two by right of survivorship. Section 1431, Civil Code, is cited, which provides that "a right created in

favor of several persons is presumed to be joint, and not several. . . . This presumption, in the case of a right, can be overcome only by express words to the contrary.''

Defendant company did not demur to the complaint, and in its answer raised no issue as to the misjoinder or nonjoinder of parties plaintiff. Defendant Moulton demurred only on the ground of insufficient facts, and as to the pendency of another similar cause of action as to which there was no evidence. By section 430, subdivision 4, Code of Civil Procedure, a defect or misjoinder of parties plaintiff is made ground of special demurrer. By section 434 of the same code it is provided: ''If no objection be taken by demurrer or answer, the defendant must be deemed to have waived the same,'' except as to jurisdiction and insufficiency of facts.

Grounds of special demurrer which were not presented in the trial court will not be considered by the appellate court. (*Gale* v. *T. C. Water Co.*, 44 Cal. 43; *Tatum* v. *Rosenthal*, 95 Cal. 129, [29 Am. St. Rep. 97, 30 Pac. 136]; *Redfield* v. *Oakland C. S. Ry. Co.*, 110 Cal. 277; see, also, as to misjoinder of causes of action, *Roberts* v. *Eldred*, 73 Cal. 394, [42 Pac. 822]; see, also, Pomeroy's Code Remedies, *206, *207.) Mr. Pomeroy says that a misjoinder of plaintiffs is no defense in an equitable action. (Pomeroy's Code Remedies, *211; see, also, Freeman on Covenants, sec. 367.)

Furthermore, the point is not well taken because the court found, on sufficient evidence, that Leonardini owned a half interest in the mortgage note. We know of no principle by the operation of which his interest would pass to the other payees of the note by right of survivorship. If we should give section 1431 of the Civil Code the interpretation claimed for it, which we should be loath to do as applicable to an ordinary form of promissory note, still the presumption therein referred to may be rebutted, and, in the present case, the presumption was rebutted by the evidence that Leonardini had a one-half interest in the note and mortgage. Besides, section 683 of the Civil Code provides that ''a joint interest is one owned by several persons in equal shares, by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy,'' etc.; and this section applies to all kinds of property. (*Denigan* v. *San Francisco Sav. Union*, 127 Cal. 142, [59 Pac. 390].)

Section 686 of the Civil Code declares that ''Every interest created in favor of several persons in their own right is an interest in common, . . . unless declared in its creation to be a joint interest.''  Speaking of section 1431, Civil Code, on which appellant relies, it was said in *Denigan* v. *San Francisco Sav. Union*, 127 Cal. 142, [59 Pac. 390]: ''This provision has reference, however, merely to the relation between the parties in whose favor the right is created, and the party against whom it is created.  It is correlative to the obligation incurred by the party against whom the right exists, but does not purport to determine the interest of the parties in whose favor the right exists as between themselves.''

Mr. Pomeroy says: ''Where two or more persons are jointly interested in the money secured by a mortgage, that is, according to the law prevailing in this country, when they are joint mortgagees, or joint assignees of a mortgage, they must all unite in a foreclosure.''   (Pomeroy's Code Remedies, sec. 169, p. *255.)

From every view point, as we see the case, the judgment and order should be affirmed, and it is so ordered.

Buckles, J., and McLaughlin, J., concurred.