[No. 30781. Department One. May 3, 1949.]

ROY L. MARYATT *et al.*, *Respondents*, v. MILDRED M. HUBBARD, *Appellant.*[1]

*Holman & Sprague* and *Andrew M. Williams, Jr.*, for appellant.

*Eggerman, Rosling & Williams* and *Henry E. Kastner*, for respondents.

[1] Reported in 205 P. (2d) 623.

BEALS, J.—During the summer and autumn of 1946, the plaintiffs, Mr. and Mrs. Roy L. Maryatt, and the defendant, Mrs. Mildred M. Hubbard, were neighbors, residing in Broadmoor, Seattle.

Upon Mrs. Hubbard's land was a greenhouse, and, learning through her gardener that Mr. and Mrs. Maryatt desired to purchase a greenhouse for their property, negotiations were opened which resulted in an agreement between the parties that plaintiffs would purchase, and defendant would sell, the latter's greenhouse for one hundred seventy-five dollars. The agreement was entirely oral, no written memorandum whatever having been made in connection with the transaction.

During the month of October, shortly after the agreement was made, defendant, who was ill, went to a hospital, where she remained until December 23, 1946, no communications passing between the parties during that period. On the date last mentioned, shortly after defendant had returned to her home, Mrs. Maryatt called, with a check for one hundred seventy-five dollars, drawn by plaintiff Roy L. Maryatt, and payable to defendant, who received and endorsed the check, but never cashed it.

The defendant, who was still suffering from a heart condition, allowed the matter to rest, being fully aware that the check had been delivered to her and was intended to cover the agreed price for the greenhouse.

Early in January, 1947, defendant decided to sell her home and accepted an offer therefor. The purchasers insisted that the greenhouse be included in the sale, and defendant endeavored to communicate with plaintiffs and tell them that she felt compelled to repudiate the sale of the greenhouse.

January 17th, defendant wrote to Mrs. Maryatt, stating that she could not sell the greenhouse to plaintiffs and had explained the situation to Mrs. Maryatt's sister, requesting her to tell the man who was to move the greenhouse to call the defendant, but that she had not heard from him. The letter continued: "I am returning your check which I had endorsed but did not deposit." Prior to returning the check,

defendant drew ink lines through her endorsement thereon.

A short time after defendant sent this letter, Mr. Roberson, a builder, who had been employed by plaintiffs, called at defendant's home to move the greenhouse to plaintiffs' property. He was advised that the greenhouse would not be sold to plaintiffs, and, later, constructed for them on their property a greenhouse of approximately similar size. The construction of this new greenhouse cost plaintiffs $682.81, or $301.81 more than they would have paid the defendant for her greenhouse, plus the cost of moving and reconstructing the same.

Plaintiffs instituted this action, alleging in their complaint the facts above set forth, and that, by reason of defendant's refusal to deliver the greenhouse, in accordance with the oral agreement between the parties, plaintiffs had been damaged in the sum of $301.81, for which amount they demanded judgment against defendant.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in plaintiffs' favor, followed by a judgment against defendant, in the sum of $301.81, together with plaintiffs' costs.

From this judgment, defendant has appealed.

Appellant's assignments of error present one question of law, namely, whether or not the evidence shows that the parties made a valid and binding contract for the purchase and sale of the greenhouse.

Appellant relies upon Rem. Rev. Stat., § 5836-4, the statute of frauds, which provides, in part, as follows:

"(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

Appellant contends that the delivery of Mr. Maryatt's bank check to appellant, and its acceptance and retention

by her for a considerable period of time, did not constitute a payment or, in any other way, a compliance with the section of the statute above quoted.

Appellant frankly admits that, under certain circumstances, a check may constitute such a payment as to take a contract without the terms of the statute, and that the acceptance, by the vendor, of a check, in whole or part payment, as the equivalent of cash, will result in the making of a contract enforcible by either party. Appellant argues, however, that the evidence introduced in the case at bar discloses that the check in question did not constitute payment within the statute, for the reason that the evidence failed to show that the check was received by appellant "as absolute payment, or under any express or implied agreement that it would be accepted as payment as contrasted to the means of obtaining payment."

In the case of *Roberts v. Williams*, 6 Wn. (2d) 599, 108 P. (2d) 334, 131 A. L. R. 1246, which was an action upon a check, brought by a vendor of personal property of a value in excess of fifty dollars, this court affirmed a judgment in favor of the vendor, holding that delivery of a check, which was accepted by the vendor's agent as cash and bound the vendor to complete the transaction, constituted a binding contract which supported a judgment in the vendor's favor against the vendee, who had attempted to repudiate the purchase. The court was not called upon to decide whether or not the acceptance of the purchaser's check should be held to constitute a payment, within the terms of the statute above quoted.

In the case at bar, the evidence shows, beyond question, that appellant had agreed to sell, and respondents had agreed to purchase, the greenhouse for the sum of one hundred seventy-five dollars. There was, of course, no delivery or partial delivery, and there was no note or memorandum of the contract, in writing, signed by appellant.

If a binding contract between the parties was made, it was because of the delivery of the check, and its retention and endorsement by appellant. Apparently, no such question has ever been directly passed upon by this court.

In the case of *Anderson v. National Bank of Tacoma,* 146 Wash. 520, 264 Pac. 8, appears the following:

"The ordinary bank check is not, either in law or equity, an assignment of the funds upon which it is drawn (§ 3579, *supra* [Rem. Comp. Stat., § 3579]), but is purely and simply an order for the payment of money which in nowise affects the debt for which it is given until the order is paid."

■ Clearly, the drawing and delivery of a check to the vendor, by a purchaser under an oral contract, constitutes a payment within the terms of the statute of frauds, if the check is intended by the vendee to be a payment, either in whole or in part, and is so delivered by the vendee, and if the check is received and accepted by the vendor as a payment. The determination of whether such a check constitutes a payment in a particular case, depends upon the evidence introduced at the trial.

In the case at bar, there can be no question but that respondents drew and delivered the check, intending the same to be payment in full for the greenhouse.

Appellant contends that the evidence does not support the trial court's conclusion and judgment to the effect that appellant became bound, as upon a lawful, valid, and completed contract, to deliver the greenhouse to respondents.

Appellant testified as a witness before the court. She was frank and candid, and on no occasion varied from a straightforward narration of the transactions between the parties. We quote from appellant's testimony on direct examination. After stating that she decided to sell the greenhouse during the month of October, 1946, her counsel asked her:

"Under what circumstance did you, in effect, advertise this greenhouse was being sold? A. Well, it was due to my gardener. He told me that Mrs. Maryatt was looking for a greenhouse, and I said I didn't have any use for mine, my health didn't permit me working in it, and that I agreed to sell because I did have use for that space at that time. . . . Q. Will you please state what conversations you had with Mrs. Maryatt relating to the sale of this greenhouse? A. Well, I think Mrs. Maryatt first called me on the phone, and I decided that I would sell but I didn't have any idea

what price. So I think she sent someone over to find out what the cost would be. Q. And did you have any later conversations with Mrs. Maryatt relating to an agreement to sell the greenhouse to her? A. Yes, I agreed to sell it to her. Q. Now, do you recall approximately to the best of your recollection when that was? A. Well, I think it was sometime in October or previous to October. . . . Q. Well, about how long after making this agreement did you go to the hospital? A. Well, after making the agreement I went into the hospital in October, and I arrived home on the 23rd of December, and at that day they delivered the check to my door. . . . Q. Now, how long after your return from the hospital was this check delivered at your door? A. Well, I think it was delivered the same day. Q. And who received it there? A. Well, some guest that was calling on me, and they gave it to my housekeeper, which I had at that time. She brought the check up to my room, and I asked her to lay it on my desk, which she did."

The witness then testified that, as her doctor forbade her to go up and down stairs, she decided to sell her home and, soon after the first of the year (1947), attempted to find a purchaser. Later, the following occurred:

"Q. Where was the check for $175 during the period after its receipt by you and prior to the time you sent it home, I mean back to the Maryatts? A. Well, it was on my desk upstairs. THE COURT: When—as a matter of fact, when was it sent back? MR. KASTNER: January 17, your Honor."

On cross-examination, appellant testified, referring to the delivery of respondents' check to her, December 23, 1946:

"Q. And your —you say, your housekeeper came up with this check for $175, Mr. Maryatt's check, is that correct? A. Yes. Q. And that was in pursuance of your contract in which you agreed to sell the greenhouse to Mrs. Maryatt for $175? A. At that time, yes. . . . Q. When the check was presented to the houeekeeper, and the housekeeper presented to you at that time and you received it, I say, that was in fulfillment of this contract that you had with the plaintiffs? A. Well, at that time, yes, that's so. Q. Well, at that time—that's the time I'm referring to. And at that time you had advised Mrs. Maryatt she could remove the greenhouse at her—at her convenience or whenever she saw fit to do so? A. That was before my illness, before the sale of my house. . . . Q. The reason for your refusal to

deliver the greenhouse to the plaintiff was because the new purchaser wanted it? A. That's right. . . . Q. When did you endorse the check? A. I endorsed the check some time during—before the 17th of January; when I went back to the hospital, I had to take care of some business, and I signed my checks, and— . . ."

The witness then testified that she had endorsed the check but that she did not remember on what date she did so. She also testified that she never questioned Mr. Maryatt's credit, and had no reason to doubt that the check would be paid on presentation. She also testified that, before mailing the check to Mrs. Maryatt, she had crossed out her endorsement thereon.

Whether or not a check, or other form of negotiable paper, is accepted as a payment, under the circumstances here shown or under other similar circumstances, depends upon the intention of the parties, and, in deciding such a question, the court or jury should consider the actions of the parties in connection with the transaction.

In the case of *Coffman v. Fleming*, 301 Mo. 313, 256 S. W. 731, the supreme court of Missouri adopted the opinion of the court of appeals affirming a judgment of the circuit court in favor of the plaintiff. It was held that a sale, for future delivery, of personal property for more than fifty dollars was binding upon the defendant, who had accepted the plaintiff's check for fifty dollars and held the check for two or three weeks before tendering it back to the plaintiff, who had refused to accept it. The court held that the question of whether the plaintiff accepted the check as part payment was one of fact, to be determined by the jury. It appeared that the plaintiff's check was good, and would have been cashed upon presentation, and that the record contained nothing to indicate that the defendant had any doubt as to the plaintiff's solvency when the contract was entered into.

The supreme court of Iowa, in the case of *Rohrbach v. Hammill*, 162 Iowa 131, 143 N. W. 872, which was tried as an action for damages for breach of a parol contract for the transfer of an interest in real estate, affirmed a judgment

in favor of the plaintiff. The action was tried to a jury, which returned a verdict in favor of the plaintiff, and, from a judgment entered on the verdict, the defendant appealed. It appeared that, at the time the oral contract was entered into, the plaintiff delivered to the defendant his check for five hundred dollars, and that the defendant later returned the check to the plaintiff and refused to carry out the contract. The defendant contended that the contract was void, under the statute of frauds. The court quoted at length from the opinion in the case of *Conde v. Dreisam Gold Mining Co.*, 3 Cal. App. 583, 86 Pac. 825, the quotation concluding with the following:

" 'We do not, however, understand the rule to require that there should be express words or writing of the parties agreeing that the check should be absolute payment. The circumstances and the conduct of the parties taken together may show an express understanding that the check is taken in satisfaction of the debt, or estop the creditor from claiming the contrary. As here, for example, the check was sent for the express purpose of payment, and was retained under circumstances implying that it was so accepted. It has been held that unreasonable delay in returning a check may make it equal to payment.' "

The court continued:

"We do not hold that the delivery and acceptance of the check in all cases discharges the original debt *pro tanto*, but we do hold that a check may be delivered and received under such circumstances, and that the jury might well be justified in finding that, in the particular case, it was received as a partial payment of the consideration involved in the transaction, and here the relationship of the parties, the purpose for which the check was given and received, what was said and done at the time of the transaction, the words indorsed upon the check at the time of its delivery, the letter written by the defendant subsequently were sufficient to sustain a finding on the part of the jury that the check was given and received in part payment of the purchase price of the land in question. The fact that the check was subsequently returned does not tend to negative this fact. Any property delivered in part payment of the consideration might be returned by the party receiving it, and therefore, with equal force, might he claim that the con-

sideration was not paid. We do not think the court erred in submitting this question to the jury, and we think the verdict of the jury has support in the evidence."

In the case of *Charles R. Ablett Co. v. Sencer*, 130 Misc. 416, 224 N. Y. Supp. 251, it was held that the delivery to the plaintiff of the purchaser's check was sufficient to take an oral contract for the purchase of goods exceeding fifty dollars in value without the statute of frauds. It appeared that, when the check was delivered, the seller (plaintiff in the action) gave the defendant a receipted bill for the merchandise, and that, subsequently, the defendant purchaser stopped payment on the check and the plaintiff brought suit thereon. The court denied the defendant's motion to set aside the verdict of the jury and for a new trial.

In the case at bar, there is little, if any, substantial conflict in the evidence. Appellant desired to sell the greenhouse, and the parties agreed upon a price which was satisfactory to all concerned. After the delivery of the check to appellant, she was still satisfied with the contract and endorsed the check. When, upon cross-examination (*supra*), appellant was asked whether she received the check in fulfillment of the contract, she answered: "Well, at that time, yes, that's so."

At a later date, when she found a purchaser for the entire property, which, evidently, she had not anticipated selling when she made the contract with respondents for the sale of the greenhouse, and the purchaser insisted that the greenhouse be included in the sale, appellant repudiated her contract with respondents and returned their check, with the letter referred to above.

The trial court found that appellant accepted the check in full payment for the greenhouse, and this finding is amply supported by the evidence.

Apparently, appellant did not decide to sell her home until after January 1, 1947. Certainly she reached that decision some days after respondents' check was delivered to her. When her endorsement was placed thereon is uncertain. On cross-examination, appellant testified that

she received the check, recognizing that it represented payment by respondents of the agreed price for the sale of the greenhouse. She never questioned Mr. Maryatt's credit or that the check would be paid upon presentation.

The trial court's finding that respondents suffered damage in the sum of $301.81 is supported by the evidence.

The trial court correctly held that respondents were entitled to judgment against appellant for the amount referred to, and the judgment appealed from is affirmed.

JEFFERS, C. J., STEINERT, MALLERY, and HILL, JJ., concur.