[No. 85949-3. En Banc.]
Argued February 14, 2012.      Decided July 19, 2012.

RANDY ANFINSON ET AL., *Respondents*, v. FEDEX GROUND
PACKAGE SYSTEM, INC., *Petitioner*.

854

*Kelly P. Corr, Guy P. Michelson, Kevin C. Baumgardner,* and *Emily J. Harris* (of *Corr Cronin Michelson Baumgardner & Preece LLP*); and *Howard M. Goodfriend* and *Catherine Wright Smith* (of *Smith Goodfriend PS*), for petitioner.

*William J. Rutzick* and *Martin S. Garfinkel* (of *Schroeter Goldmark & Bender*); and *Lawrence R. Schwerin* and *Dmitri L. Iglitzin* (of *Schwerin Campbell Barnard Iglitzin & Lavitt LLP*), for respondents.

*Toby J. Marshall* and *Jeffrey L. Needle* on behalf of Washington Employment Lawyers Association, amicus curiae.

*Robert M. McKenna, Attorney General,* and *Amanda J. Goss, Assistant,* on behalf of Department of Labor and Industries, amicus curiae.

¶1 OWENS, J. — This case concerns the classification of workers as employees or independent contractors for purposes of the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. A class of 320 former and current FedEx Ground Package System Inc. delivery drivers (hereinafter Anfinson) brought this action seeking overtime wages under the MWA and reimbursement for uniform expenses under the industrial welfare act (IWA), chapter 49.12 RCW. The primary dispute with respect to both claims is whether the drivers were employees or independent contractors. The

parties disagree on the correct test to distinguish these categories under the MWA; FedEx argues that the common law right-to-control standard governs while Anfinson contends that the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, economic-dependence test controls. The trial court gave the jury a hybrid instruction, focusing the inquiry on FedEx's right to control in light of the economic-dependence factors. The jury determined that the drivers were independent contractors.

¶2 Anfinson appealed, contending, among other things, that the jury instructions misinformed the jury about the standards for determining worker status and about the requirement that class status and evidence be "common to the class members," Clerk's Papers (CP) at 2194 (Instruction 8). The Court of Appeals held that the jury instruction defining the standard for determining worker status was erroneous and prejudicial and reversed on that basis. *Anfinson v. FedEx Ground Package Sys., Inc.*, 159 Wn. App. 35, 53-55, 244 P.3d 32 (2010). The Court of Appeals further held that the jury instruction on the burden of proof was erroneous because it misled the jury and was prejudicial. *Id.* at 65-71. We affirm the Court of Appeals in both respects.

## FACTS

¶3 In 2004, Randy Anfinson, James Geiger, and Steven Hardie filed a class action against FedEx "for unpaid overtime wages and for reimbursement of uniform expenses." CP at 7. Anfinson, Geiger, and Hardie, each a former FedEx pickup and delivery driver, sought to serve as representatives for a class consisting of all drivers who had signed a contractor agreement with FedEx and handled a single route over the three-year period preceding the filing of the complaint. On January 28, 2008, the trial court certified the class as proposed. The court also bifurcated the case into a liability phase and a damages phase.

¶4 Near the close of the liability phase, FedEx moved to decertify the class. The trial court denied the motion. After a four-week trial, the jury returned a verdict on March 31, 2009, finding that the class members were independent contractors, not employees. Anfinson appealed; FedEx did not cross appeal.

¶5 In a thoughtful and carefully reasoned opinion, the Court of Appeals affirmed in part and reversed in part. *Anfinson*, 159 Wn. App. at 74. The court decided several issues in Anfinson's favor. Most notably, the court reversed the judgment, holding that the trial court erred in instructing the jury on the legal standard for determining whether a worker is an "employee" under the MWA. *Id.* at 53-55. The Court of Appeals also rejected FedEx's claim that Anfinson should be estopped from asserting that the economic-dependence test governs under the MWA. *Id.* at 62-63. The Court of Appeals further agreed with Anfinson that "the belief of the parties[ ] is not a relevant factor under the FLSA test" but left to the trial court the determination, in the first instance, of whether there are persuasive reasons to depart from the FLSA factors under the MWA. *Id.* at 59. In addition, the Court of Appeals held that the instruction requiring that the evidence be "common to the class members" was misleading and prejudicial. *Id.* at 68-71.

¶6 The Court of Appeals also decided several issues in FedEx's favor. With respect to the trial court's denial of several of Anfinson's proposed instructions, the Court of Appeals held that the trial court had not abused its discretion. *Id.* at 60-61, 63-64, 71. The court also held that the proper articulation of the FLSA factor focuses on the worker's investment, not the relative investment of the parties.[1] *Id.* at 59. Further, the Court of Appeals rejected Anfinson's contention that the trial court erred in giving

---

[1] We presume that the Court of Appeals intended to leave application of this FLSA factor open on remand in the same way that it left the belief of the parties factor open for consideration by the trial court in the first instance. *See Anfinson*, 159 Wn. App. at 59.

the jury a special verdict form asking only whether the workers were employees or independent contractors as opposed to asking the jury to determine each of the factors and leaving the court to determine whether, based on those factors, the workers are employees or independent contractors. *Id.* at 71-73. Finally, the Court of Appeals denied as premature Anfinson's request for attorney fees. *Id.* at 73-74.

¶7  FedEx filed a petition for review of three issues. First, FedEx sought review of the Court of Appeals' holding that worker status under the MWA is governed by the economic-dependence test and that instruction 9, which used the right-to-control test, was reversible error. Pet. for Review at 1. Second, FedEx sought review of the Court of Appeals' holding that judicial estoppel does not apply in this case. *Id.* at 1-2. Third, FedEx sought review of the Court of Appeals' conclusion that instruction 8, regarding the "common to the class members" requirement, was misleading and prejudicial. *Id.* at 2; CP at 2194. Anfinson did not raise any additional issues in its answer. *See* Resp'ts' Answer to Pet. for Review at 1. Accordingly, the additional issues decided by the Court of Appeals are not before us. *See* RAP 13.7(b). We granted FedEx's petition for review. *Anfinson v. FedEx Ground Package Sys., Inc.*, 172 Wn.2d 1001, 258 P.3d 685 (2011).

## ISSUES

¶8  1. Did instruction 9 correctly state the standard for determining whether a worker is an "employee" under the MWA?

¶9  2. Did instruction 8 correctly state that evidence must be common to the class members in a class action lawsuit under the MWA?

## ANALYSIS

### I. Standard of Review

¶10 Jury instructions are reviewed de novo for errors of law. *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005). "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996). If any of these elements are absent, the instruction is erroneous. *See Joyce*, 155 Wn.2d at 323-25. An erroneous instruction is reversible error only if it prejudices a party. *Id.* at 323. Prejudice is presumed if the instruction contains a clear misstatement of law; prejudice must be demonstrated if the instruction is merely misleading. *Keller v. City of Spokane*, 146 Wn.2d 237, 249-50, 44 P.3d 845 (2002).

¶11 A trial court's decision with respect to the application of judicial estoppel is reviewed for abuse of discretion. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007). "A trial court abuses its discretion when its decision or order is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons." *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009).

### II. Employee Status under the MWA

*A. Anfinson Has Not Preserved Any Error regarding the IWA Claim*

¶12 At trial, Anfinson claimed that FedEx had violated RCW 49.12.450, a component of the IWA, by failing to reimburse employees for uniform expenses. An element of this claim was proof that class members were employees and this determination was governed by instruction 9. The jury's finding that the class members were independent

contractors, and not employees, applied to both the MWA and IWA claims. In its brief to the Court of Appeals, Anfinson's assertion that instruction 9 was erroneous was predicated exclusively on its interpretation of the MWA; Anfinson made no argument that instruction 9 contained an error of law with respect to the IWA. *Cf.* WAC 296-126--002(2)(c) (exempting "[i]ndependent contractors [who] control the manner of doing the work" from definition of "employee" under the IWA). While Anfinson's assignment of error is broad enough to cover the IWA claim, "[a] party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." *Brown v. Vail*, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010). Accordingly, Anfinson has waived any argument that instruction 9 contained an error of law with respect to the IWA.

## B. *Judicial Estoppel Does Not Apply*

¶13 FedEx argues that judicial estoppel precludes Anfinson from challenging the use of the right-to-control standard in determining employee status. We disagree.

■ ■ ¶14 " 'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.' " *Arkison*, 160 Wn.2d at 538 (quoting *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). There are two primary purposes behind the doctrine: preservation of respect for judicial proceedings and avoidance of inconsistency, duplicity, and waste of time. *Id.* "[A] trial court's determination of whether to apply the judicial estoppel doctrine" is guided by three core factors: (1) whether the party's later position is " 'clearly inconsistent with its earlier position,' " (2) whether acceptance of the later inconsistent position " 'would create the perception that either the first or the second court was misled,' " and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party. *Id.* at

538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). This issue requires a brief review of the parties' positions with respect to the governing test over the course of this litigation.

### 1. Anfinson's Legal Argument Changed over Time

¶15 In its August 6, 2007, motion for class certification, Anfinson relied exclusively on the common law right-to-control test to establish commonality under CR 23(a)(2). FedEx's opposition to class certification also relied upon the right-to-control test, as did the trial court's order granting class certification.

¶16 The parties' approaches to the appropriate legal test shifted over time. In its October 6, 2008, motion in limine to exclude class members' tax returns, Anfinson asserted that neither the 10 factors from *Restatement (Second) of Agency* § 220 (1958) nor the 6 factors from the FLSA economic-dependence test applied. On October 10, 2008, FedEx responded that the right-to-control test was guided by the 10-factor test set forth in *Restatement (Second) of Agency* § 220 as well as one additional factor from the FLSA factors.

¶17 Anfinson first advocated the economic-dependence test in October 2008 and did so only as an alternative to its preferred, right-to-control standard. Anfinson's first proposed jury instructions, filed with the superior court on October 17, 2008, included two alternative instructions regarding the appropriate test. The first instruction (proposed instruction 13) stated that the jury "must determine whether the defendant had the right of control over the physical conduct of the services performed" and did not include any factors. CP at 962. The second alternative (proposed instruction 13A), which Anfinson sought "only in the event the Court" did not adopt proposed instruction 13, informed the jury that it had to consider five factors "to determine whether the plaintiffs were so dependent upon

defendant's business such that plaintiffs were not, as a matter of economic reality, in business for themselves during the class period." *Id.* at 963. These instructions were discussed in Anfinson's accompanying trial brief. FedEx's first proposed jury instruction, filed on October 17, 2008, identified the key inquiry as being FedEx's right to control the details of class members' performance of their work and included 10 factors based on *Restatement (Second) of Agency* § 220 and 1 factor from the FLSA economic-dependence test. FedEx also fully responded to Anfinson's proposed instructions 13 and 13A in its supplemental trial brief.

¶18 Anfinson's February 9, 2009, supplemental trial brief reiterated the two alternative approaches in its proposed instructions: a factorless right-to-control test and a six-factor economic-dependence test, discussing the latter at greater length. FedEx's response focused on the correctness of the common law standard as articulated in its proposed jury instruction. Following a hearing before the court, Anfinson filed a memorandum discussing the economic-dependence test on February 25, 2009. This included proposed instruction 13C, which contained another iteration of the six-factor economic-dependence test. FedEx's response to Anfinson's February 25, 2009, memorandum for the first time suggested that Anfinson should be judicially estopped from advocating the economic-dependence test. At a hearing on February 26, 2009, the court informed counsel that "I'm not giving weight to the judicial estoppel argument," explaining that "I . . . understand that there's some unfairness," but that the court was not persuaded that the "shift of factors" caused a loss of commonality or otherwise undermined class certification. Verbatim Report of Proceedings (VRP) (Feb. 26, 2009) at 22-23.

¶19 Ultimately, the trial court instructed the jury that the decision as to whether the drivers were employees or independent contractors "requires you to determine whether FedEx Ground controlled, or had the right to con-

trol, the details of the class members' performance of the work." CP at 2195 (Instruction 9). The instruction then set forth six FLSA factors and two additional factors adopted from the right-to-control test. Anfinson specifically objected to this instruction.

### 2. The Trial Court Did Not Abuse Its Discretion

¶20 The trial court's decision not to "giv[e] weight to the judicial estoppel argument," VRP (Feb. 26, 2009) at 22-23, is properly reviewed for an abuse of discretion. *See Arkison*, 160 Wn.2d at 538. Reviewing the three core factors governing judicial estoppel, we conclude that the trial court did not abuse its discretion.

¶21 Here, the first factor weighs in favor of judicial estoppel. Anfinson's assertion during the liability phase that the economic-dependence test—and not the right-to-control test—governed is clearly inconsistent with the earlier assertion at the class certification stage that the right-to-control test governed. While the two assertions were made within the same trial, this does not preclude application of judicial estoppel. *See King v. Clodfelter*, 10 Wn. App. 514, 519, 518 P.2d 206 (1974) (stating that the purpose of judicial estoppel applies to evidence that is inconsistent with "sworn testimony the party has given in the same or prior judicial proceedings"); *cf. Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) (identifying the relevant periods of inconsistency as "phase[s] of a case").

¶22 The second factor disfavors application of judicial estoppel. The record contradicts any implication that the court was misled in granting class certification or that Anfinson was " 'playing fast and loose with the courts.' " *New Hampshire*, 532 U.S. at 750 (internal quotation marks omitted) (quoting *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). Anfinson's assertion that the economic-dependence test controlled initially came about as an alternative—and secondary—argument in response to

FedEx's effort to combine the economic-dependence and right-to-control factors as guides to determining FedEx's right to control the performance of the drivers' work. Over time, Anfinson came to rely solely on the economic-dependence test. This appears less to be an act of duplicity by Anfinson than an evolving understanding of the relevant law.

¶23 The third factor also does not favor judicial estoppel because FedEx was not prejudiced by Anfinson's adoption of a contrary legal argument. Had the trial court been persuaded by Anfinson's legal argument, FedEx could have moved to decertify the class. *See Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 278, 267 P.3d 998 (2011) ("A class is always subject to later modification or decertification by the trial court . . . ."). In addition, it was FedEx that first argued that federal case law regarding the economic-dependence test was persuasive authority in Washington. This was not a situation in which a new legal argument took the opposing party unawares.

¶24 Because two of the three factors disfavor application of judicial estoppel, the trial court did not err in refusing to apply judicial estoppel to Anfinson's legal argument. In reaching this conclusion, we reject the distinction relied upon by the Court of Appeals, *see Anfinson*, 159 Wn. App. at 63, between application of judicial estoppel to assertions of fact and questions of law. *See, e.g., CHD, Inc. v. Taggart*, 153 Wn. App. 94, 102, 220 P.3d 229 (2009); *King*, 10 Wn. App. at 519. *But see In re Estates of Smaldino*, 151 Wn. App. 356, 363, 212 P.3d 579 (2009), *review denied*, 168 Wn.2d 1033 (2010). This distinction cannot be reconciled with our decision in *Hardgrove v. Bowman*, 10 Wn.2d 136, 116 P.2d 336 (1941). The *Hardgrove* court approved of the application of judicial estoppel where a litigant had, in a previous case, successfully argued that a contract was invalid and unenforceable and subsequently sought to recover for breaches of the same contract. *Id.* at 138-39. The validity of a contract is a question of law. *Maryatt v.*

*Hubbard,* 33 Wn.2d 325, 327, 205 P.2d 623 (1949). Thus, judicial estoppel may apply to questions of law where the three core factors so indicate. *Cf. Helfand v. Gerson,* 105 F.3d 530, 535 (9th Cir. 1997) (noting that "[t]he greater weight of federal authority . . . supports the position that judicial estoppel applies to a party's stated . . . legal assertion"). Here, however, the trial court did not abuse its discretion in determining that judicial estoppel does not apply.

### C. *Instruction 9 Was Reversible Error*

¶25 We now turn to the heart of this case—whether instruction 9 correctly stated the standard governing a worker's status as either an employee or an independent contractor for purposes of the MWA. This is a two-part inquiry. First, we must determine the appropriate legal standard. Second, we must determine whether the jury instruction properly stated that standard and, if not, whether the error was prejudicial. For the reasons set forth below, we conclude that the correct standard is the economic-dependence test and that instruction 9 contained a clear misstatement of law, making it presumptively prejudicial.

#### 1. *The Economic-Dependence Test Controls Worker Status under the MWA*

¶26 We begin by ascertaining the correct legal standard for determining whether a worker is an employee under the MWA. This is a question of statutory interpretation. Statutory interpretation is governed by well-settled principles. The court's "fundamental objective when interpreting a statute is 'to discern and implement the intent of the legislature.' " *Five Corners Family Farmers v. State,* 173 Wn.2d 296, 305, 268 P.3d 892 (2011) (quoting *State v. J.P.,* 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). The court first attempts to discern the plain meaning of the statute, which is gleaned "from all that the Legislature has said in the

statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). If the statute remains " 'susceptible to two or more reasonable interpretations,' it is ambiguous." *Five Corners Family Farmers*, 173 Wn.2d at 305 (quoting *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005)). "If a statute is ambiguous, we 'may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent.' " *Id.* at 305-06 (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

■ ¶27 The MWA defines the term "employee." Under RCW 49.46.010(3), " '[e]mployee' includes any individual employed by an employer" subject to multiple exceptions not relevant here. Under the MWA, " '[e]mploy' includes to permit to work." RCW 49.46.010(2). An " '[e]mployer' " is any individual or entity "acting directly or indirectly in the interest of an employer in relation to an employee." RCW 49.46.010(4). Taken together, these statutes establish that under the MWA, an employee includes any individual permitted to work by an employer. This is a broad definition. *See Stahl v. Delicor of Puget Sound, Inc.*, 148 Wn.2d 876, 884, 64 P.3d 10 (2003) ("[T]he legislature broadly defined employee in RCW 49.46.010([3]).").

¶28 Both parties' interpretations of the statutory definition of "employee" are reasonable. Anfinson argues the key inquiry is whether the alleged employee is, as a matter of economic reality, dependent upon the business to which he or she renders service. This is a reasonable interpretation because one hallmark of the employer-employee relationship is the employee's dependence upon the employer for income; absent such dependence the relationship is, arguably, better categorized as an employer-independent contractor relationship. FedEx argues that the key inquiry is whether the employer possessed the right to control the alleged employee's physical conduct in the performance of

his or her duties. This is also a reasonable interpretation of the definition of "employee." At least arguably, when a business lacks the ability to control another performing tasks that benefit the business, it is not acting as an "employer," but rather as one party to a contract with an independent contractor. Because there are at least two reasonable interpretations of the statutory definition of "employee," the term is ambiguous.

¶29 Legislative history decisively favors Anfinson's proposed interpretation. The MWA was adopted in 1959. LAWS OF 1959, ch. 294. We have repeatedly recognized that the "MWA is based on the Fair Labor Standards Act of 1938." *Stahl*, 148 Wn.2d at 885; *see also Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582 (2000). The definitions of "employee" and "employ" are functionally identical under the two acts. *Compare* 29 U.S.C. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer."), *with* RCW 49.46.010(3) (" 'Employee' includes any individual employed by an employer . . . ."); *compare also* 29 U.S.C. § 203(g) (" 'Employ' includes to suffer or permit to work."), *with* RCW 49.46.010(2) (" 'Employ' includes to permit to work.").[2] At least where there is no contrary legislative intent, when a state statute is "taken 'substantially verbatim' from [a] federal statute, it carries the same construction as the federal law and the same interpretation as federal case law." *State v. Bobic*, 140 Wn.2d 250, 264, 996 P.2d 610 (2000) (quoting *State v. Carroll*, 81 Wn.2d 95, 109, 500 P.2d 115 (1972)).

¶30 At the time that Washington adopted the MWA, the federal courts had rejected the right-to-control test for determining employee status under the FLSA. *See, e.g., Walling v. Portland Terminal Co.*, 330 U.S. 148, 150, 67 S. Ct. 639, 91 L. Ed. 809 (1947). Instead the federal courts

---

[2] The relevant definition of "suffer" is "not to forbid or hinder" with the synonym "PERMIT." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2284 (2002). As "suffer" is synonymous with "permit," its omission does not indicate a substantive change.

looked to a variety of factors. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729-30, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947). "[T]he determination of the relationship . . . depend[s] . . . upon the circumstances of the whole activity." *Id.* at 730. Interpretation of the FLSA was guided by interpretations of the Social Security Act of 1935, ch. 531, 49 Stat. 620, and the National Labor Relations Act of 1935, ch. 372, 49 Stat. 449, 331 U.S. at 723, and, under those acts, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S. Ct. 1547, 91 L. Ed. 1947 (1947); *see Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790, 69 S. Ct. 1317, 93 L. Ed. 1692 (1949) (citing *Nat'l Labor Relations Bd. v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 120, 128-31, 64 S. Ct. 851, 88 L. Ed. 1170 (1944)). Shortly after Washington's adoption of the MWA, the United States Supreme Court used the term " 'economic reality' " to define the relevant inquiry under the FLSA. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) (quoting *United States v. Silk*, 331 U.S. 704, 713, 67 S. Ct. 1463, 91 L. Ed. 1757 (1947)).

¶31 Over time, the *Bartels* formulation, with minor refinements, has come to be the touchstone inquiry in determining whether a worker is an employee or an independent contractor for purposes of the FLSA. *See, e.g., Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981). Federal courts have established competing lists of nonexclusive factors that are relevant to the determination. *See, e.g., Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (five factors); *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979) (six factors).

¶32 The legislature's nearly verbatim adoption in the MWA of the FLSA language with respect to the definition of "employee" evidences legislative intent to adopt the federal standards in effect at the time. Those

federal standards had decidedly rejected the right-to-control test in favor of the *Bartels* formulation.

¶33 Adoption of the economic-dependence test for determining employee status is also appropriate as a matter of liberal construction. The MWA is remedial legislation. *Drinkwitz*, 140 Wn.2d at 301. As remedial legislation, the MWA is given a liberal construction, *see Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 45, 42 P.3d 1265 (2002); exemptions from its coverage "are narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation," *Drinkwitz*, 140 Wn.2d at 301. Categorization of workers as independent contractors exempts those workers from coverage by the MWA. A liberal construction, therefore, is one that favors classification as an employee. The economic-dependence test provides broader coverage than does the right-to-control test. *See Walling*, 330 U.S. at 150-51. Liberal construction favors the economic-dependence test.

¶34 Moreover, consideration of the contrasting purposes of vicarious liability—to which the right-to-control test set forth in *Restatement (Second) of Agency* § 220 applies—and the MWA bolsters our rejection of the right-to-control test. The right-to-control test serves to limit an employer's liability for the torts of another. By contrast, minimum wage laws have a remedial purpose of protecting against " 'the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health,' " *United States v. Rosenwasser*, 323 U.S. 360, 361, 65 S. Ct. 295, 89 L. Ed. 301 (1945) (quoting S. Rep. No. 884, at 4 (1937)), and "to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage," *Walling*, 330 U.S. at 152. "The reasons for blocking vicarious liability at a particular point have nothing to do with the functions of the FLSA." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1544 (7th Cir. 1987)

(Easterbrook, J., concurring). Nor do those reasons have anything to do with the functions of the MWA, which is patterned after the FLSA. Thus, the purpose served by the right-to-control test differs from the purpose of the MWA. This disfavors the use of the right-to-control test in determining whether a worker is an employee under the MWA.

¶35 In sum, we hold that the definition of "employee" in RCW 49.46.010(3) incorporates the economic-dependence test developed by the federal courts in interpreting the FLSA.[3] The relevant inquiry is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins*, 545 F.3d at 343; *see also Schultz*, 466 F.3d at 304; *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988). This articulation is particularly helpful because the inclusion of the phrase "in business for himself" clarifies the meaning of the otherwise-vague term "economically dependent."

### 2. Instruction 9 Clearly Misstated the Applicable Law

¶36 We must now determine whether instruction 9 was erroneous. Instruction 9 stated as follows:

> You must decide whether the class members were employees or independent contractors when performing work for FedEx Ground. This decision requires you to determine whether FedEx Ground controlled, or had the right to control, the details of the class members' performance of the work.
>
> In deciding control or right to control, you should consider all the evidence bearing on the question, and you may consider the following factors, among others:
>
> 1. The degree of FedEx Ground's right to control the manner in which the work is to be performed;

---

[3] In reaching this conclusion, we place no weight on the nonpublished Department of Labor and Industries rule that was not provided to the trial court. *Cf. Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 851 n.1, 50 P.3d 256 (2002).

2. The class members' opportunity for profit or loss depending upon each one's managerial skill;

3. The class members' investment in equipment or materials required for their tasks, or their employment of others;

4. Whether the service rendered requires a special skill;

5. The degree of permanence of the working relationship;

6. Whether the service rendered is an integral part of FedEx Ground's business;

7. The method of payment, whether by time or by the job; and

8. Whether or not the class members and FedEx Ground believed they were creating an employment relationship or an independent contractor relationship.

Neither the presence nor the absence of any individual factor is determinative.

CP at 2195. This instruction is clearly erroneous. Under this instruction, employee status was governed by a single determination—"whether FedEx Ground controlled, or had the right to control, the details of the class members' performance of the work." *Id.* The eight listed factors were relevant only "[i]n deciding control or right to control." *Id.* As discussed above, this is not the correct inquiry. The correct inquiry is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins*, 545 F.3d at 343. There is a material distinction between these two standards—the economic-dependence test results in a more inclusive definition of "employee" than does the right-to-control test. *See Walling*, 330 U.S. at 150-51. The ultimate inquiry presented to the jury by instruction 9 was a clear misstatement of the law, and, as such, instruction 9 is presumptively prejudicial. *See Keller*, 146 Wn.2d at 249-50.

¶37 FedEx's arguments that instruction 9 was not erroneous are unpersuasive. First, FedEx is correct that the right-to-control language was both "meaningful" and "understandable." Suppl. Br. of Pet'r at 9, 11. Nonetheless, in

this context it provided the wrong meaning and an incorrect understanding. Second, FedEx is correct that control is one important factor in the economic-dependence test. That does not, however, save instruction 9, for under instruction 9, the right to control is dispositive. FedEx's implication that the "right to control" language was a mere "preamble," *id.* at 9, as opposed to the ultimate inquiry, simply misreads the instruction. Finally, the suggestion that instruction 9 is an appropriate hybrid of two separate standards for the MWA and IWA also misses the mark. Though we do not reach the correct standard under the IWA, even assuming, for the sake of argument, that it was controlled by the right-to-control test, this does not justify an instruction that is clearly incorrect with respect to the separate MWA claim. Anfinson may have never proposed that the jury be separately instructed on the two claims, but it did object to instruction 9. It may be that had Anfinson been successful in its objection and at trial, FedEx would have been able to have the IWA claim reversed on appeal. That point is purely academic given our conclusion that Anfinson failed to preserve any error with respect to its IWA claim.

¶38 FedEx has failed to rebut the presumption of prejudice. Contrary to FedEx's argument, Anfinson was not free to argue its theory of the case (i.e., that as a matter of economic reality, the drivers were economically dependent upon FedEx and not in business for themselves). While, at trial, Anfinson focused on FedEx's right to control the class members, this was only *after* the trial court had given the jury a preliminary instruction that made FedEx's right to control dispositive. Indeed, the fact that the instructions compelled Anfinson to argue a theory of the case contrary to the one it advocated is evidence of the prejudice, not evidence of its absence. Nor was the evidence so overwhelming to compel the conclusion that the drivers were independent contractors. The facts, and the inferences to be drawn from those facts, were closely contested in this case. Moreover, even if FedEx were correct and the facts of the case

overwhelmingly demonstrated that FedEx did not have the right to control the drivers, the right to control is but one among multiple factors that the jury *may* consider; its presence is not necessary. *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 68-69 (2d Cir. 2003) (reversing summary judgment order that had been based solely on absence of right to control).

¶39 In sum, instruction 9 was a clear misstatement of the law and, as such, was presumptively prejudicial. Because FedEx cannot rebut the presumption of prejudice, we affirm the Court of Appeals on this issue.

III. Instruction 8 and Representative Evidence

¶40 FedEx next contends that the Court of Appeals erred in holding that instruction 8 was misleading and prejudicial. Instruction 8 provided:

> Plaintiffs have the burden of proving that "employee" status was common to the class members during the class period. You should not consider individualized actions, conduct, or work experience unless you find that they reflect policies, procedures, or practices common to the class members during the class period.

CP at 2194. This instruction is ambiguous and therefore misleading. Because this misleading instruction was prejudicial to Anfinson, instruction 8 was reversible error.

¶41 At the outset, we note that CR 23(a)(2)'s requirement of common questions of law or fact is a question of law for the court to determine at the class certification stage; it is not a question for the jury in determining liability. Accordingly, the Court of Appeals correctly noted that "case law from the class certification stage of a CR 23 action . . . is not persuasive as to the plaintiff [s'] burden of proof at the liability phase of trial." *Anfinson*, 159 Wn. App. at 68.

¶42 Instruction 8 is ambiguous because the term "common" is subject to multiple definitions. The term is not defined elsewhere in the instructions, so we turn to diction-

ary definitions to ascertain the jury's likely understanding of the word. *Cf. State v. Scott*, 110 Wn.2d 682, 691-92, 757 P.2d 492 (1988) (looking to dictionary definition to see if jury's understanding would conflict with technical meaning of term). In context, the term "common" can mean either "shared by . . . *all* members of a group," MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 232 (10th ed. 1993) (emphasis added), or "characteristic of a *usual* type or standard : *representative* of a type," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 458 (2002) (emphasis added). The former definition effectively prohibits the use of representative evidence in a class action under the MWA and would be an incorrect statement of the law. *Cf. Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3d Cir. 1994) (stating that in FLSA cases, "[c]ourts commonly allow representative employees to prove violations with respect to all employees" and collecting cases); *Scott v. Cingular Wireless*, 160 Wn.2d 843, 851, 161 P.3d 1000 (2007) (noting the "state policy favoring aggregation of small claims for purposes of efficiency, deterrence, and access to justice").

¶43 Under the definition of "common" as meaning "all," instruction 8 limited the plaintiffs' ability to rely on representative evidence in two ways. First, the second sentence of instruction 8 would prohibit consideration of individual "actions, conduct, or work experience" unless it was shared by *all* members of the class. In this way, it would have precluded plaintiffs from relying on evidence that was true for most, but not all, members of the class. This would be erroneous. *See Donovan*, 656 F.2d at 1371. Second, the first sentence of instruction 8 stated that "[p]laintiffs have the burden of proving that 'employee' status was common to the class members during the class period." CP at 2194. Given the definition of "common" as meaning "all" and without an additional instruction on representative evidence, this sentence would suggest to the jury that Anfinson's burden was to demonstrate to the jury that each and every member of the plaintiff class was an employee without also making

clear that this could be accomplished through the use of representative evidence. This, too, is misleading with respect to a plaintiff class's burden. *See Martin v. Selker Bros.*, 949 F.2d 1286, 1298 (3d Cir. 1991).

¶44 In order to be reversible, a misleading jury instruction must also be prejudicial. *Keller*, 146 Wn.2d at 249. Unlike a clear misstatement of law, prejudice is not presumed. *Id.* at 249-50. In this case, the prejudice occurred during closing argument when FedEx's attorney argued to the jury that "[t]hey [(Anfinson)] have to show you that all 320 of those people are employees. . . . [I]f they showed you that only 319 were and one wasn't, your verdict should be for FedEx Ground because they haven't met their burden." VRP (Mar. 30, 2009) at 78. This argument took what had been a mere latent possibility of misunderstanding and actively encouraged the jury to apply an erroneous legal standard. It is no answer that Anfinson remained free to argue the alternative—and correct—interpretation of "common"; FedEx urged the jury to rely on an incorrect statement of the law—an incorrect interpretation permitted by instruction 8. Nor did Anfinson waive any error by failing to object to the closing argument. The closing argument was not the *error*, it was the source of *prejudice*; as appellate counsel for FedEx conceded at oral argument, trial counsel's statement during closing argument was a valid argument under instruction 8. This makes clear that it was instruction 8 itself that was ambiguous and permitted the jury to rely on an incorrect statement of law.

¶45 In sum, instruction 8 was misleading because it was ambiguous, permitting both an interpretation that was, arguably, a correct statement of the law and an interpretation that was an incorrect statement of the law. Anfinson has demonstrated that this misleading statement was prejudicial by showing that the incorrect statement was actively urged upon the jury during closing argument. No greater showing of prejudice from a misleading jury instruction is possible without impermissibly impeaching a

jury's verdict. *Cf. State v. Ng*, 110 Wn.2d 32, 43-44, 750 P.2d 632 (1988) (prohibiting impeachment of a jury verdict through use of, inter alia, postverdict statements by jurors).

## CONCLUSION

¶46 We conclude that instructions 8 and 9 both amounted to reversible error. Under the MWA, the correct inquiry into whether a worker is an employee covered by the act or an independent contractor not covered by the act is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins*, 545 F.3d at 343. While instruction 9 correctly included the employer's right to control as one factor for the jury to consider, it also erroneously made that factor dispositive. Instruction 8 was also misleading in its implication that Anfinson was unable to rely upon representative evidence. Because the instruction was also prejudicial, it too was reversible error. We affirm the Court of Appeals.[4]

MADSEN, C.J., and FAIRHURST, STEPHENS, and GONZÁLEZ, JJ., concur.

¶47 C. JOHNSON, J. (dissenting) — The majority reverses a jury finding where a review of the plaintiffs' proposed instructions regarding the test for determining "employee" versus "independent contractor" status, and of the instruction given by the trial court, reveals that the plaintiffs essentially received what they requested. Not only did the instruction permit the plaintiffs to argue their "evolving" theory of the case, it did not clearly misstate Washington law. The majority nevertheless changes the law and finds prejudice where none exists. In the course of doing so, the

---

[4] As did the Court of Appeals, we also decline to award attorney fees to Anfinson under RCW 49.46.090(1) or RCW 49.48.030 as such an award would be premature.

majority does not attempt to distinguish or overrule the Washington case discussing the determination of "employee" versus "independent contractor" status that was relied upon repeatedly by the parties and the trial court.

¶48 More troubling, the majority adopts an unworkable "economic dependence" definition that by its terms sweeps too broadly and could arguably be applied to almost any work performed by one person on behalf of another. An instruction regarding the determination of "employee" versus "independent contractor" status for Washington Minimum Wage Act (MWA), chapter 49.46 RCW, purposes should help the jury to draw a line between persons for whom coverage was intended and persons for whom it was not. Focusing on "dependence," rather than "control," effectively blurs this line out of existence. For these reasons I dissent.

¶49 In their motion for class certification, the plaintiffs argued commonality based on the employee status of all class members. Citing *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 498, 663 P.2d 132 (1983), they defined "employee" for class purposes as " 'one whose physical conduct in the performance of the service is subject to the other's right of control.' " Clerk's Papers (CP) at 2867. They asserted at that time that *Ebling* is particularly on point because it "distinguishes between employees and independent contractors in the context of the Washington wage statutes."[5] CP at 2867.

---

[5] *Ebling* involved a claim for unpaid wages. A sailboat salesman who formerly sold boats for the defendant, Ebling sought damages for commissions withheld, plus double damages pursuant to wage statutes, RCW 49.52.050(2) and RCW 49.52.070. The defendant contended Ebling was an independent contractor and therefore could not recover under the statutes, which apply only to "employees." The Court of Appeals defined "independent contractor" as "one who contracts to perform services for another, but is not subject to the other's right to control his physical conduct in performing the services" and defined "employee" as "one whose physical conduct in the performance of the service is subject to the other's right of control." *Ebling*, 34 Wn. App. at 498 (citing *Hollingbery v. Dunn*, 68 Wn.2d 75, 79-80, 411 P.2d 431 (1966); RESTATEMENT (SECOND) OF AGENCY § 2(3) (1958)). The court held Ebling was an employee within the meaning of the statute, citing "abundant evidence" that the defendant and Ebling believed the defendant had the right to control Ebling's work. *Ebling*, 34 Wn. App. at 498.

In granting class certification, the trial court, also citing *Ebling*, agreed that the critical test for determining employee status is whether FedEx Ground Package System Inc. had the right to control the work performed. This definition works well in this context.

¶50 The plaintiffs successfully opposed FedEx's motion to decertify the class by citing *Ebling* and maintained in their trial and supplemental trial briefs that *Ebling* set forth the proper test for distinguishing employees from independent contractors *"in the context of Washington wage and hour law."* CP at 1760; *see* CP at 1045. In those briefs, the plaintiffs argued that *Ebling* directly supported their proposed instruction regarding "employee" versus "independent contractor" status, which stated:

> In order to determine whether an individual is an employee or an independent contractor, you must determine whether the defendant had the right of control over the physical conduct of the services performed. If you find that defendant had this right of control during the class period, you must find the plaintiffs were employees of defendant. If defendant had this right of control, the fact that some plaintiffs hired others to help them perform their work does not turn them into independent contractors.

CP at 962, 1077, 2342. Plaintiffs proposed an alternative jury instruction to be used *"only* in the event the Court [chose] not to follow *Ebling."* CP at 963. That instruction contained factors from the Ninth Circuit's formulation of the economic dependence test in *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981),[6] and instructed the jury to weigh the factors to determine whether

---

[6] The plaintiffs' initial alternative instruction was modeled on the Fifth Circuit's five-factor formulation of the economic dependence test, and stated:

"In order to determine whether an individual is an employee or an independent contractor, you must consider the following five factors:

"(1) the degree of defendant's right of control over the manner in which plaintiffs' work is to be performed;

"(2) the extent of the relative investments of the plaintiffs as compared to the defendant;

plaintiffs were "so dependent upon defendant's business such that plaintiffs were not, as a matter of economic reality, in business for themselves during the class period." CP at 1078.

¶51 The trial court ultimately adopted an instruction that incorporated *Ebling* and *Sureway*.[7] The introduction to the instruction followed *Ebling*, generally satisfying the plaintiffs' primary request. The first six factors were taken from *Sureway* and mirrored the factors proposed by the plaintiffs in their alternative instructions. The final two factors were borrowed from the common law "right to control" test and arguably addressed both right to control

---

"(3) the degree to which plaintiffs' opportunity for profit or loss is determined by defendant;

"(4) the skill required of plaintiffs in performing the work; and

"(5) the permanency of the relationship."

CP at 1078. Plaintiffs later turned to the Ninth Circuit's six-factor test and proposed an additional alternative instruction which included the Ninth Circuit's sixth factor: the extent to which the work is an integral part of the alleged employer's business.

[7] That instruction read:

"You must decide whether the class members were employees or independent contractors when performing work for FedEx Ground. This decision requires you to determine whether FedEx Ground controlled, or had the right to control, the details of the class members' performance of the work.

"In deciding control or right to control, you should consider all the evidence bearing on the question, and you may consider the following factors, among others:

"1. The degree of FedEx Ground's right to control the manner in which the work is to be performed;

"2. The class members' opportunity for profit or loss depending upon each one's managerial skill;

"3. The class members' investment in equipment or materials required for their tasks, or their employment of others;

"4. Whether the service rendered requires a special skill;

"5. The degree of permanence of the working relationship;

"6. Whether the service rendered is an integral part of FedEx Ground's business;

"7. The method of payment, whether by the time or by the job; and

"8. Whether or not the class members and FedEx Ground believed they were creating an employment relationship or an independent contractor relationship.

"Neither the presence nor the absence of any individual factor is determinative." CP at 2195.

and economic dependence. Thus, rather than hindering the plaintiffs' ability to argue their theory of the case, which, at the time of trial, embraced notions of both FedEx's right to control the plaintiffs' work and the broader "economic reality" of the relationship, the instruction facilitated their ability to do so by incorporating the focus and factors they requested.

¶52 More importantly, the instruction is not a clear misstatement of Washington law. *Ebling* is currently the only Washington wage case discussing the determination of "employee" versus "independent contractor" status. And while courts may consider the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, authorities as persuasive, such authorities are not controlling in MWA cases. *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 523-24, 7 P.3d 807 (2000). Because the MWA defines "employee" circularly, in essence providing no definition at all, courts may look to both Washington common law and FLSA authorities for guidance in defining "employee." Such a review may, based on the facts of a particular case, result in a test incorporating both common law and FLSA factors, as the instruction did in this case. This is especially so given that five of the six *Sureway* factors overlap with the common law "right to control" test.[8] The majority concludes the instruction clearly misstated the law by not adopting the FLSA authorities' reference to "economic dependence" and does so without overruling or distinguishing *Ebling*.

¶53 Even more importantly, the majority's adoption of the "economic dependence" test will not help juries draw a line between persons for whom the MWA was intended to cover and persons for whom it was not. Under the majority's new rule, employee status is governed by a single determination—whether the worker is "economically dependent" upon the alleged employer—and any listed factor will be relevant *only* in deciding economic dependence. The prob-

---

[8] Compare factors 1, 3, 4, 5, and 6 in *Sureway*, 656 F.2d at 1370, with factors (a), (d), (e), (f), and (h) in *Hollingbery*, 68 Wn.2d at 80-81.

lem with the majority's "economic dependence" focus is that it potentially sweeps in by its language almost any work done by one person on behalf of another. Judge Easterbrook correctly illustrated the uselessness of the term "economic dependence" in the context of determining whether migrant farm workers were employees under the FLSA:

> Now the families may be dependent on the pickle business once they arrive at Lauritzen's farm and settle down to work. If a flood carried away the cucumbers, the migrants would be hard pressed to find other work immediately. This, however, is true of anyone, be he employee or independent contractor. A lawyer engaged full-time on a complex case may take a while to find new business if the case unexpectedly settles. Migrant workers are no more dependent on Lauritzen than are sellers of fertilizer, who rely on the trade of the locality and are in the grip of economic forces beyond their control, and the person who fixes Lauritzen's irrigation equipment, a classic independent contractor.

*Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) (Easterbrook, J., concurring).

¶54 In this case, the plaintiff drivers are dependent on FedEx for their livelihood. But so too is the painting subcontractor dependent on the builder, the tire manufacturer on General Motors, the aviation electronics firm on Boeing, and so on. Employee status under the MWA is a factual determination that turns on the working arrangement between the parties, including the employer's right to control the work and the parties' subjective intent.[9] We ask juries to draw a line between persons whom the act was intended to cover and persons whom it was not. Instructions are provided to help the jury draw this line. While no

---

[9] Curiously, the majority never analyzes the written operating agreement between the parties, does not challenge the validity of the agreement (although the agreement expressly establishes an independent contractor relationship), and never tells us why written agreements that do not violate public policy play no role in determining the employer/employee relationship. This seems odd given the central role the agreement played at trial.

test for this purpose is without fault, an instruction that centers its focus on "dependence" blurs this line intolerably.

¶55 The jury considered the evidence and determined the plaintiffs were not employees under instructions essentially proposed by the plaintiffs and which were legally correct. The jury's decision should be affirmed.

J.M. JOHNSON, J., concurs with C. JOHNSON, J.