**FILED**
**June 14, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WESLEY B. AMES and | ) | No. 32704-3-III |
| STANLEY R. AMES, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DARLEEN AMES and | ) | |
| ARLETA J. PARR, individually | ) | |
| and jointly, | ) | |
| | ) | |
| Respondents. | ) | |

PENNELL, J. — Brothers Wesley and Stanley Ames appeal the dismissal of their civil suit on the basis of standing, collateral estoppel, and judicial estoppel. We agree dismissal should not have been ordered on these bases. Furthermore, although there are questions about whether the Ames brothers will be able to establish causation, they should be allowed to develop this issue in superior court. Accordingly, this matter is reversed and remanded for further proceedings.

## FACTS

The individuals involved in this case are largely all family members. Roy and Rubye Ames are the parents of Wesley Ames and Stanley Ames. Arleta Parr is a daughter of Mr. and Mrs. Ames, while Darleen Ames is a daughter-in-law[1]. For ease of reference in the remainder of this opinion, these individuals are collectively referred to as the "Ames parents" or "parents," the "Ames brothers" or "brothers," and the "Ames sisters" or "sisters."

In 1966, the Ames parents purchased a farm in Stevens County, Washington. They have lived on the farm since 1976. In 1997, the parents encountered financial difficulties and sold their farm to the Ames brothers. There was no written sale agreement. The expectation was the parents would retain a life estate. Unfortunately, as the years passed, the relationship between the Ames parents and the Ames brothers became strained. Litigation ensued.

*Stevens County Case*

The Ames parents filed suit against the Ames brothers[2] in Stevens County for

---

[1] Darleen is married to a third Ames brother, Randy, who was not a party to either lawsuit.

[2] Though not relevant here, the Ames parents also sued their oldest daughter, Merita Dysart, along with the brothers.

breach of resulting and/or constructive trust.[3] The brothers counterclaimed, contending

their parents had a life estate in the farm. Early in the litigation, an injunction was issued

which, in relevant part, prohibited the brothers from entering the Ames farm.

After the injunction issued, the Ames brothers reviewed the insurance coverage

they maintained on the farm and learned certain assets on the property were not covered.

An insurance agent named Fran Jenne went to the farm to evaluate outbuildings for

additional coverage. It was this visit that ultimately laid the groundwork for the instant

case. There are differing accounts of what happened.

According to the Ames brothers, when Ms. Jenne arrived at the farm she received

approval to look around from the parents. Shortly after Ms. Jenne began her evaluation,

she saw a vehicle being moved to block the driveway. It had been operated by the Ames

sisters. Ms. Jenne felt uneasy. When the Ames sisters refused to move the vehicle, Ms.

Jenne locked herself in her car and called the police. A law enforcement officer arrived,

defused the situation, and Ms. Jenne left.

The sisters dispute the brothers' version of the events. According to their account,

when the sisters saw Ms. Jenne taking pictures of buildings on the farm, they believed she

---

[3] For more extensive facts, see *Ames v. Ames*, 184 Wn. App. 826, 340 P.3d 232 (2014).

was at the farm at the behest of the Ames brothers in violation of the court order. The sisters blocked Ms. Jenne's car while they attempted to find a copy of the injunction. They were unaware their actions were inappropriate.

After the incident involving Ms. Jenne, the brothers received a notice of nonrenewal from their insurance company. A motion for injunctive relief was subsequently filed in the pending Stevens County case, requesting the brothers be allowed on the farm so they could properly insure their assets.

The Stevens County court largely granted the injunctive relief requested. The court issued an order specifying the Ames brothers could go on the farm with an insurance agent and with accommodation from the parents. The court also ordered the house and all buildings on the premises be insured. In its order, the court did not mention the Ames sisters or address whether they had engaged in any misconduct either alone or at the behest of the parents.

Trial on the ultimate issue of the parties' respective rights to the farm was held almost a year after resolution of the motion for injunctive relief. The court ruled the Ames parents had a life estate in the farm with full management and control over the property, improvements, timber, and farm equipment. The court also awarded the Ames brothers the remainder estate. The court initially ordered the parents to pay the taxes and

4

the brothers to pay the insurance premiums. However, these obligations were later reversed after the brothers complained the parents were the ones in control of the farm and the insurance premium had increased from $800 per year to $2,800 per year because of the state of the property.

The Ames brothers appealed the trial court's ruling. *See Ames v. Ames*, 184 Wn. App. 826, 340 P.3d 232 (2014). The issues on that appeal had nothing to do with any of the events detailed here. *See id.*

## Present Case

While the appeal of the Stevens County case was pending in this court, the Ames brothers filed a complaint against the Ames sisters in Spokane County, alleging tortious interference with contract, conspiracy, and gross negligence. The superior court dismissed the brothers' complaint with prejudice. The court held the brothers did not have standing on their first two claims. As to the third claim alleging negligence, the superior court held the Ames sisters were entitled to relief under theories of collateral estoppel and judicial estoppel. The brothers now seek relief from this court.

## ANALYSIS

## Standing

Standing is a question of law reviewed de novo. *West v. Thurston County*, 144

5

No. 32704-3-III
*Ames v. Ames*

Wn. App. 573, 578, 183 P.3d 346 (2008). To satisfy standing, plaintiffs must show they fall within the zone of interests protected by their claimed cause of action and that they suffered some sort of injury in fact, economic or otherwise. *Branson v. Port of Seattle*, 152 Wn.2d 862, 875-76, 101 P.3d 67 (2004). Here, the debate is over the first component of standing: whether the Ames brothers properly fall within the zone of interest protected by a claim for tortious interference with contract.[4] We thus focus on the nature of that claim.

To establish a claim of tortious interference, the plaintiff must prove five elements: (1) the existence of a valid contractual relationship, (2) the defendant(s) had knowledge of that relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship, (4) that defendants interfered for an improper purpose or used improper means, and (5) resultant damage. *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 157-58, 52 P.3d 30 (2002).

The first three elements make clear the tort is intended to benefit a party to a contract. The question for standing purposes is whether the fourth element further restricts the scope of protected parties to those contract holders who are also direct

---

[4] The Ames brothers do not contest the superior court's dismissal of their conspiracy claim against the sisters on the basis of standing. Accordingly, we deem that claim abandoned.

6

victims of a defendant's improper conduct. Here there is no dispute the Ames brothers were a party to the insurance contract they claim was damaged. However, they were not the direct victims of the Ames sisters' alleged unlawful imprisonment. That was Ms. Jenne, the insurance agent. Thus, if standing requires plaintiffs to be the direct victims of the misconduct alleged in the fourth element of their prima facie case, the claim here must fail.

We decline to adopt such a restricted rule for seeking relief for tortious interference with a contract. At its essence, the tort of contractual interference is aimed at protecting the rights of a contract holder. *Calbom v. Knudtzon*, 65 Wn.2d 157, 162, 396 P.2d 148 (1964). As such, it is the contract that defines the scope of a cause of action, not a defendant's chosen means of interference. So as long as a plaintiff would have standing to enforce the contract, he or she has standing to sue for tortious interference.

Developments in the law of tortious interference solidify our view. Originally, a claim of tortious interference only involved four elements. What is now the fourth element—improper purpose or means—was not required. *Pleas v. City of Seattle*, 112 Wn.2d 794, 800, 774 P.2d 1158 (1989). Instead, evidence of defendants' ill will or misconduct was simply relevant to overcome a defense of privilege. *Id.* This allocation of proof was criticized as being too favorable to plaintiffs. Thus, following the lead of

7

the second Restatement of Torts, our Supreme Court adopted what is now the fourth element, requiring plaintiffs to prove not only that defendants intentionally interfered with a contract interest but also that they did so for an improper purpose or by using improper means. *Id.* at 804. This resetting of the scales was intended to ease the burden faced by defendants. However, it was not intended to impact a contract holder's standing to sue. Under the early version of the tort, all that was required was a plaintiff be a party to the contract at issue. The same is true now.

Because the Ames brothers were parties to the insurance contract and would have had standing to enforce the contract, they had standing to bring a claim of tortious interference.

*Collateral Estoppel*

Issues of collateral estoppel are reviewed de novo. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel, also known as issue preclusion, "promotes the policy of ending disputes by preventing the relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present a case." *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987). Among other prerequisites, a party asserting collateral estoppel must show the issue to be precluded has actually been litigated and necessarily determined in a prior

8

action. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 508, 745 P.2d 858 (1987).

As proponents, the Ames sisters bear the burden of establishing collateral estoppel. They argue collateral estoppel applies to the issue of whether they were acting as agents of their parents at the time they allegedly interfered with the brothers' contract.[5] We disagree. No agency determination was ever made in the Stevens County case. The judge there simply ruled, without finding fault on either side, that the brothers were entitled to access the family property for purposes of obtaining insurance. Given the brothers' remainder interest in the property, the court correctly found they were entitled to take steps to insure the property, regardless of whether they had been wrongfully denied the ability to do so in the past. The Stevens County court did not need to find, and indeed did not find, an agency relationship in order to rule on that issue.[6]

---

[5] The superior court's order does not identify the exact issue that is subject to preclusion. Because the sisters' arguments are confined solely to the issue of agency, ours is as well. We can discern no other issue that might be amenable to an argument of preclusion.

[6] Even if a determination had been made on agency, that finding alone would not preclude the brothers' claim. In order for collateral estoppel to apply, the Stevens County court would not only have needed to make a finding regarding agency but also of wrongdoing. If the Stevens County court had decided the sisters were acting as agents of the parents (who were parties to the suit) but there had been no wrongdoing, then that finding could be used defensively by the sisters in this case. However, there was neither a finding of agency nor wrongdoing. Thus, the defense of collateral estoppel does not apply.

*Judicial Estoppel*

This court reviews a trial court's decision with respect to the application of judicial estoppel for abuse of discretion. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012). "'A trial court abuses its discretion when its decision or order is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons.'" *Id.* (quoting *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)).

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Id.* at 861 (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007). The two primary purposes behind the doctrine are the preservation of respect for judicial proceedings and the avoidance of inconsistency, duplicity, and waste of time. *Id.*

The sisters' judicial estoppel argument fails because there is no inconsistency between the brothers' current position and the one taken in Stevens County. The fact that the brothers have chosen to sue the two sisters is not inconsistent with their prior claim of agency. This is because an agent can be held responsible for wrongful conduct apart from any responsibility by the principal. RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. b

10

(2006); *see Annechino v. Worthy*, 175 Wn.2d 630, 638, 290 P.3d 126 (2012) (citing with approval this concept from the *Restatement*).

Even if there were some tension between the brothers' current allegations and those made in Stevens County, judicial estoppel would still be inappropriate. A prerequisite for judicial estoppel is that a litigant's prior inconsistent position must have somehow benefitted the litigant in the prior proceeding or been accepted by the court. *Taylor v. Bell*, 185 Wn. App. 270, 282-83, 340 P.3d 951 (2014). This condition is not satisfied here. Nothing in the Stevens County court record indicates the judge relied on the brothers' assertions of agency, either at the time of the injunction hearing or later. The Stevens County court's decisions with respect to insurance obligations were governed by the parties' respective interests in, and access to, the family farm. It was not dependent on a finding of fault or agency.

During the Spokane County proceedings, the court's judicial estoppel analysis rested, at least in part, on the concern that allowing the brothers' lawsuit to go forward would work an injustice because they should have joined the sisters in the Stevens County proceeding. Whatever concerns there may be regarding the possibility of vexatious

11

litigation or harassment,[7] application of judicial estoppel was not the appropriate sanction. The Stevens County case was essentially a declaratory action to define the parties' rights with respect to the Ames family farm. The misconduct allegations against the sisters were not relevant to this determination. However, if the brothers had lost their suit in Stevens County and been denied any interest in the family farm, then they would have had no realistic cause of action against the sisters. Without a legal interest in the farm, the brothers would be unable to establish any right to access the farm for purposes of obtaining insurance. Whatever its merits, the current suit follows logically from the Stevens County court's determination that the brothers have an interest in the property.

*Causation*

While this matter should not have been dismissed on issues of standing or estoppel, the court has concerns about causation. The notice of nonrenewal regarding the brothers' insurance contract states the policy was being terminated because the farm lacked upkeep and the residence was missing large portions of siding and paint. The notice did not indicate the contract was cancelled because of the incident involving the Ames sisters. During oral argument in superior court, counsel for the sisters repeatedly

---

[7] The brothers' protestations against such allegations are not assisted by the inflammatory language used against the sisters' counsel in their briefing.

asserted the brothers lacked evidence of causation. Subsequent to submitting this case without oral argument, this court requested briefing on whether this matter should be resolved on the issue of causation.

In their briefing, the brothers claim they possess sufficient evidence of causation and ask to be able to develop this issue in superior court. While we have some reservations about whether the brothers will be able to meet their burden, we agree resolution at this time is premature. Because causation was not directly litigated in superior court, the brothers should be given an opportunity to develop the factual record prior to any ultimate resolution of their claims.

*Attorney Fees*

At this point, neither side has established appropriate grounds for attorney fees.[8] However, on remand the prevailing party may ask for an award of reasonable attorney fees, including for fees incurred in this appeal.

### CONCLUSION

Based on the foregoing, the superior court's judgment dismissing the Ames brothers' complaint is reversed. This matter is remanded for further proceedings not

---

[8] While the brothers have prevailed on this appeal, they did not make a request for fees in compliance with RAP 18.1(b).

13

No. 32704-3-III
*Ames v. Ames*

inconsistent with this decision.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, A.C.J.                   Siddoway, J.

14