FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAR 11 AM 8: 16



IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| JACOB L. BEGIS,<br><br>                  Respondent,<br><br>v.<br><br>KING CUSTOM FRAMING, INC.,<br>PAUL KING and ANGELIQUE KING,<br>husband and wife, and the marital<br>community comprised thereof,<br><br>                  Appellants. | No. 67502-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br>FILED: March 11, 2013 |

LEACH, C.J. — Paul King appeals a jury verdict awarding damages to Jacob Begis, alleging numerous errors in the jury instructions. Begis sued King and his company, King Custom Framing Inc. for damages caused by a 40-foot fall through an unsecured rail at a construction site. A jury awarded Begis $683,400. Because the court's instructions did not misstate the law and allowed both parties to argue their theories of the case and because the court did not abuse its discretion by refusing to give King's proposed instruction, we affirm.

Background

In 2007, Jacob Begis applied for a general contractor's license to allow him to oversee construction of two luxury homes on waterfront property he owned in Snohomish County. Begis hired King to design and build the framing and deck work on the first home. When King notified Begis that he had completed the deck and requested payment, Begis asked to inspect the work

before paying. Begis began his inspection of the deck by walking out onto it and testing the railing on the right-hand side by grasping it and leaning over to look down. This railing held. When he performed the same test on another portion of the deck, the railing—which had not been nailed down on one end—gave way. Begis fell 40 feet and suffered serious injuries.

Begis sued King for negligence. King responded that his contract with Begis did not include building permanent railings. He claimed that the railings he built were only a temporary "visual barrier," to remain only until another contractor completed the final work. King also claimed that as the general contractor, Begis negligently failed to establish a fall prevention plan for the construction site.

At trial, Begis called Mark Lawless, a construction expert, to testify that a handrail assembly—even a temporary one—should be able to withstand 200 pounds of pressure in any direction. King testified that he understood the siding company was responsible for the final rail installation, that he was not familiar with Washington State building codes, and that he knew the railing in place could not bear a 200-pound load.

King took two exceptions to the jury instructions. First, he objected to instruction 21 about warning line systems on low-pitched roofs. Second, he objected to the court's failure to give his proposed instruction 11, which described the scope of an employer's duty on a job site. The jury found for Begis. It

awarded him $804,000, reduced by 15 percent for his contributory negligence, for a net damage award of $683,400. King appeals.

## Standard of Review

We review de novo the adequacy of challenged jury instructions.[1] "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law."[2] If any of these elements is missing, the instruction is erroneous; however, an erroneous instruction is reversible error only if it prejudices a party.[3] Where jury instructions correctly state the applicable law, "the court's decision to give the instruction will not be disturbed absent an abuse of discretion."[4]

Further, we review a trial court's refusal to give a party's proposed jury instruction for an abuse of discretion.[5] A trial court abuses its discretion if it exercises its discretion based on untenable grounds or for untenable reasons.[6]

## Analysis

King first argues that jury instruction 21 prejudiced him because the instruction was inapplicable and misleading. The instruction as given read,

---

[1] State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005).

[2] Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996).

[3] Anfinson v. FedEx Ground Package Syst., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012).

[4] Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wn. App. 412, 430, 40 P.3d 1206 (2002).

[5] State v. Winings, 126 Wn. App. 75, 86, 107 P.3d 141 (2005).

[6] State v. Smith, 124 Wn. App. 417, 428, 102 P.3d 158 (2004).

WAC 296-155-24515, "Guarding of low pitched roof perimeters," provides that:
Warning line systems:
(a) Warning lines shall be erected around all sides of the work area.
  (i) When mechanical equipment is not being used, the warning line shall be erected not less than six feet (1.8 meters) from the edge of the roof. . .
(b) The warning line shall consist of a rope, wire, or chain and supporting stanchions erected as follows:
  (ii) After being erected, with the rope, wire, or chain attached, stanchions shall be capable of resisting, without tipping over, a force of at least 16 pounds (71 Newtons) applied horizontally against the stanchion, 30 inches (0.76 meters) above the roof surface, perpendicular to the warning line, and in the direction of the roof edge.
  (iii) The rope, wire, or chain shall have a minimum tensile strength of 200 pounds (90 kilograms), and after being attached to the stanchions, shall be capable of supporting, without breaking, the loads applied to the stanchions.

King argues that this instruction was inapplicable because it applied only to pitched roofs, while Begis's injury occurred on a flat deck.

King relies on <u>Hemmingson v. Carbon Hill Coal Co.</u>,[7] in which our Supreme Court reversed a jury verdict after a trial court gave a jury instruction based on an inapplicable statute. Mr. Hemmingson was injured while working in a rock tunnel that connected to a coal mine but was not part of the mining operations. The trial court instructed the jury regarding a coal mine owner's statutory safety requirements, and the jury found the mine owner liable for Hemmingson's injury. The Supreme Court based its decision on the differences between a rock tunnel and an active coal mine, reasoning that the statute, which addressed the ultrahazardous activity of coal mining, did not apply to less dangerous mining operations, such as a gold mine or a rock tunnel.

_____

[7] 62 Wash. 28, 34-35, 112 P. 1111 (1911).

It would appear that an instruction entitled "Guarding of low pitched roof perimeters," on its face, would not apply here because Begis fell from a flat surface. But here, unlike in Hemmingson, an expert witness testified that the warning line rule did apply to horizontal decks, both by its terms and by general analogy. Therefore, King's analogy to Hemmingson is inapposite.

Further, King ignores that fact that he originally introduced the issue of a "warning line" into the case by asserting the railing was only a temporary visual barrier. After King alluded to "visual barriers" in his opening statement, Begis questioned Lawless about several WAC provisions, with no defense objection. King did not object to the admission of an exhibit that included WAC 296-155-24515, or to Lawless reading this regulation aloud to the jury. He did not object when Lawless testified that the rule also applied to work on a deck or any other horizontal surface. King also cross-examined Lawless about the standards for warning lines. Under these circumstances, the challenged regulation became relevant. Given both parties' treatment of the "warning line" issue at trial, the trial court correctly instructed the jury about WAC 296-155-24515.

Additionally, we read the jury instructions as a whole to determine whether they accurately state the law and allow each party to argue its theory of the case. King argued that the railing was a temporary "visual barrier" that he constructed to provide a warning until another contractor built a permanent railing. But the jury also heard, without objection, the testimony of Begis's construction expert that such visual barriers or "warning lines," when used on rooftops, must be set

back six feet from the edge. The jury also heard, again without objection, expert testimony that even temporary structures must comply with a regulation requiring any railing to support 200 pounds of force.

Responding to King's objection, the trial judge noted, "[T]he court is not giving an instruction saying that this necessarily is the applicable WAC, rather, indicating that there is a WAC of this nature that exists and certainly allowing each side to use their own arguments." The court determined, based on the facts presented at trial, that the instruction properly allowed both parties to argue their respective theories of the case and that given King's reliance on the warning line theory, "to not give this instruction, in this court's opinion, would almost be a comment in terms of which argument the court is siding with." We agree. King did not object to the trial testimony regarding warning line systems or to the admission of a copy of WAC 296-155-24515 into evidence. Given that the parties addressed the rule at some length during the trial, the court did not err by giving instruction 21.

King also contends that the instruction potentially misled the jury because it omitted prefatory language in the regulation stating the employer has the responsibility to provide fall protection or fall restraint systems on pitched roofs. Again, we disagree. King notes that his defense rested upon his claim that Begis was responsible for his own injury because Begis failed to take the precautions required of a general contractor. Instruction 14 allowed King to argue this theory: "A general contractor at a construction site has a duty to comply with Washington

State Safety Regulations in its oversight of all employees, not just its own employees." The court reasoned, "I have given the instruction that is broad enough that it allows the defense to argue that the general contractor does have a duty. I think to go beyond that would be overstating the case." We agree.

King also appeals the court's refusal to give his proposed instruction about an employer's duties on the job site. His proposed defense instruction 11 restated WAC 296-155-040:

> (1) Each employer shall furnish to each employee a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to employees.
>
> (2) Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do everything reasonably necessary to protect the life and safety of employees.
>
> (3) No employer shall require any employee to go or be in any employment or place of employment which is hazardous to the employee.
>
> (4) No employer shall fail or neglect:
>
> > (a) To provide and use safety devices and safeguards.
> >
> > (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe.
> >
> > (c) To do everything reasonably necessary to protect the life and safety of employees.
>
> (5) No employer, owner, or lessee of any real property shall construct or cause to be constructed any place of employment that is hazardous to the employee.

King argues that without this instruction, he was unable to present his theory of the case. He contends that instruction 14 concerning a general contractor's duty does not sufficiently address Begis's required duty of care as an employer. However, in colloquy with the judge regarding the jury instructions, King acknowledged that the other instructions described Begis's work-site duties imposed by regulation and that he could argue Begis's negligence even without his preferred instruction. Given this concession, we find no error.

## Conclusion

Because the jury instructions as given properly stated the applicable law and allowed each party to argue its theories of the case and because the court did not abuse its discretion by refusing to give a redundant instruction, we affirm.

_Leach, C.J._

WE CONCUR:

_Dwyer, J._                    _Cox, J._