IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| MONICA ARREOLA-MARTINEZ, as an individual and on behalf of all other similarly situated people. | No. 87438-1-I |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| THE STATE OF WASHINGTON, | |
| Respondent. | |

BOWMAN, A.C.J. — Monica Arreola-Martinez appeals from the trial court's dismissal of her putative class-action complaint against the state of Washington (State) for failing to pay her and other parents for time spent supervising their children while the COVID-19 pandemic suspended in-person learning. Arreola-Martinez contends that she adequately pleaded claims for violations of article IX, section 1 of the Washington Constitution; the takings clauses of the federal and state constitutions, Fifth Amendment to the United States Constitution and Washington State Constitution article I, section 16; the wage rebate act (WRA), chapter 49.52 RCW; the Washington Minimum Wage Act (MWA), chapter 49.46 RCW; and the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. sections 201-219, and for unjust enrichment. She also argues the trial court erred by denying her motion to amend her complaint a second time. Finding no error, we affirm.

FACTS

In February 2020, Governor Jay Inslee issued a proclamation, declaring a state of emergency due to the COVID-19 pandemic.  Proclamation by Governor Jay Inslee, No. 20-05 (Wash. Feb. 29, 2020).[1]  To curtail the spread of COVID-19, Governor Inslee issued another proclamation in March, prohibiting all kindergarten through grade 12 (K-12) schools in King, Pierce, and Snohomish counties "from conducting in-person educational, recreational, and other K-12 school programs in their school facilities."  Proclamation by Governor Jay Inslee, No. 20-08, at 2 (Wash. Mar. 12, 2020) (Schools Proclamation).[2]  The governor expanded the proclamation's effect to all K-12 schools statewide the next day.  Proclamation by Governor Jay Inslee, No. 20-09 (Wash. Mar. 13, 2020).[3]  Proclamation 20-09 would expire on April 24, 2020.  So, the governor extended the prohibition on in-person K-12 activities through the end of the school year.  Proclamation by Governor Jay Inslee, No. 20-09.1 (Wash. Apr. 6, 2020).[4]

In June 2020, Governor Inslee amended the Schools Proclamation to permit the resumption of in-person learning in accordance with the Department of Health's guidance.  Proclamation by Governor Jay Inslee, No. 20-09.2 (Wash.

---

[1] https://assets-global.website-files.com/5a13853ae83c4100019201c8/ 5e750d79b11e1103633bf5ed_Proclamation 20-05 State of Emergency February 29 2020.pdf

[2] https://governor.wa.gov/sites/default/files/proclamations/20-08 Coronavirus %28tmp%29.pdf

[3] https://governor.wa.gov/sites/default/files/proclamations/20-09 Coronavirus Schools Amendment %28tmp%29.pdf

[4] https://governor.wa.gov/sites/default/files/proclamations/20-09.1 - COVID-19 School Closure Extension %28tmp%29.pdf

June 11, 2020).[5]  The next year, the State prohibited remote-only instruction and required schools to offer "hybrid" learning—"both remote/on-line instruction and on-campus/in-person instruction"—by April 19, 2021.  Proclamation by Governor Jay Inslee, No. 21-05, at 5 (Wash. Mar. 15, 2021).[6]  The Schools Proclamation terminated in its entirety on October 31, 2022.  Proclamation by Governor Jay Inslee, No. 20-09.5 (Wash. Oct. 28, 2022).[7]

On November 6, 2023, Arreola-Martinez filed a putative class action complaint, asserting a single cause of action under article IX, section 1 of the Washington Constitution and seeking compensation to all parents of students affected by the Schools Proclamation.  On February 28, 2024, Arreola-Martinez amended her complaint to add causes of action for violating the takings clauses of the federal and state constitutions, the WRA, the MWA, and the FLSA.  She also alleged unjust enrichment.  Arreola-Martinez claimed that all parents were "required, under the coercive threat of criminal penalties, to suffer work and expenses on behalf of the State non-voluntarily to effectuate education via 'remote' learning."  Arreola-Martinez further alleged that the State required her and other parents to incur expenses, including but not limited to "labor and real property."  According to Arreola-Martinez, the State required parents to "work . . . in the capacity of school personnel," including as paraeducators.

---

[5] https://governor.wa.gov/sites/default/files/proclamations/20.09.2 COVID19 Phased Reopening of K12 Schools_0.pdf

[6] https://governor.wa.gov/sites/default/files/proclamations/21-05_Children %26%23039%3Bs_Mental_Health_Crisis_%28tmp%29.pdf

[7] https://governor.wa.gov/sites/default/files/proclamations/20-09.5 - COVID-19 K-12 Schools_Rescission_%28tmp%29.pdf

The State moved to dismiss Arreola-Martinez's complaint for failure to state a claim under CR 12(b)(6). As part of her response to the district's motion, Arreola-Martinez requested leave to amend her complaint for a second time. The trial court denied Arreola-Martinez's request to amend and granted the State's CR 12(b)(6) motion, dismissing the complaint with prejudice. The court found that her claims and "hypothetical facts" failed as a matter of law and that any benefit to the State was not unjust because the "primary beneficiary of [Arreola-Martinez]'s efforts to assist her child with remote school was her own child."

Arreola-Martinez moved for reconsideration, which the trial court denied. Arreola-Martinez appeals.

ANALYSIS

Arreola-Martinez asserts that the trial court erred by dismissing her claims under CR 12(b)(6) and by denying her request for leave to amend her complaint. We review each of her arguments in turn.

1. CR 12(b)(6) Dismissal

Under CR 12(b)(6), a defendant may move to dismiss a complaint for the plaintiff's "failure to state a claim upon which relief can be granted." We review de novo an order granting a CR 12(b)(6) motion to dismiss. *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015). "Dismissal under CR 12(b)(6) is appropriate in those cases where the plaintiff cannot prove any set of facts consistent with the complaint that would entitle the plaintiff to relief." *Id.*

In considering a motion to dismiss under CR 12(b)(6), we presume all facts alleged in the complaint are true. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 717, 189 P.3d 168 (2008). "However, the complaint's legal conclusions are not required to be accepted on appeal." *Jackson*, 186 Wn. App. at 843 (citing *Haberman v. Wash. Pub. Power Supply Sys.,* 109 Wn.2d 107, 120, 744 P.2d 1032 (1987)). Even hypothetical facts "conceivably raised by the complaint defeat[ ] a [CR] 12(b)(6) motion," but they must be "legally sufficient to support [the] plaintiff's claim." *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978). If a plaintiff's claim is legally insufficient, even under proffered hypothetical facts, dismissal is appropriate. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 215, 118 P.3d 311 (2005).

A. Unjust Enrichment

Arrreola-Martinez asserts that the trial court erred by dismissing her unjust enrichment claim against the State. Arreola-Martinez contends that her complaint adequately states a claim for unjust enrichment because the State received the benefit of "being saved the loss of funding . . . and loss of costs on its own facilities" when it shifted the burden of education to the parents, and that an emergency such as the COVID-19 pandemic "is not an adequate legal basis for the State to justly not pay for the benefits received." We disagree.

To state a claim for unjust enrichment, the plaintiff must allege facts showing that "(1) the defendant receive[d] a benefit, (2) the received benefit [was] at the plaintiff's expense, and (3) the circumstances ma[d]e it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 164 Wn.2d

5

477, 484-85, 191 P.3d 1258 (2008). Arreola-Martinez fails to show unjust enrichment because, as the trial court recognized, the beneficiary of Arreola-Martinez's services was her own child, not the State. Neither the Schools Proclamation nor any of the subsequent amending proclamations imposed any obligations on parents. As Arreola-Martinez acknowledges, actual instruction continued to be provided by teachers employed by their respective districts. So, a parent's role was limited to supervising their children and ensuring their attendance at "remote" school. The parents' efforts in that regard benefited their children, not the State.[8]

Further, as much as the parents' labor could be construed to benefit the State, it was not unjust. "The equitable theory of unjust enrichment is rooted in notions of fairness and justice." *Nwauzor v. The Geo Grp., Inc.*, 2 Wn.3d 505, 525, 540 P.3d 93 (2023). As such, a plaintiff must show not only that the defendant was enriched, but also that the enrichment is unjust under the circumstances and as between the two parties. *See Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 576, 161 P.3d 473 (2007) (citing *Farwest Steel Corp. v. Mainline Metal Works, Inc.,* 48 Wn. App. 719, 731-32, 741 P.2d 58 (1987)).

The circumstances here show that any enrichment conferred to the State was not unjust. As the trial court noted in its dismissal order, when the governor issued the Schools Proclamation, "COVID-19 cases, hospitalizations, and deaths were rising exponentially throughout Washington State." Further, the "models

---

[8] Arreola-Martinez also asserts that the State was unjustly enriched because remote schooling at the parents' expense saved it from losing over $2.5 billion in federal funds and saved facility-related costs like janitorial services. Because Arreola-Martinez did not make this argument in the trial court, we decline to review it. *See* RAP 2.5(a).

predicted that many hospitals could soon reach capacity or become overwhelmed with COVID-19 patients" unless the governor restricted in-person activities. There was nothing inequitable about switching students to remote learning during these extraordinary circumstances.

Still, Arreola-Martinez relies on *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 137 P.2d 97 (1943), to assert that emergencies such as the pandemic are "not a legal basis to not pay for benefits received." But *Chandler* does not support her argument. In that case, our Supreme Court held that while the plaintiff had shown he conferred a benefit to the State, he could not sustain a claim for unjust enrichment because he failed to show that he performed any preexisting duty of the State or that he ever expected to be paid for the benefit he conferred. *Id.* at 602-03. Arreola-Martinez's claim fails for a similar reason. Supervising one's own children is a hallmark of parenthood. No parent would expect to be paid for those responsibilities.

The trial court did not err by dismissing Arreola-Martinez's claim for unjust enrichment.

### B. Wage-Related Claims

Arreola-Martinez asserts that the trial court erred by dismissing her claims under the WRA, MWA, and FLSA. She contends that "the State suffered and permitted [parents] to work involuntarily under threat of criminal . . . and civil . . . penalties," which entitled her to paid wages under all three statutory schemes. We disagree.

First, no set of facts supports Arreola-Martinez's claim under the FLSA because the State is immune from FLSA claims for damages under the Eleventh Amendment to the United States Constitution. *See* Report and Recommendation, *Bettys v. State*, No. 3:23-CV-05838-BJR-TLF, 2024 WL 3927100, at *12 (W.D. Wash. July 31, 2024) (citing, *e.g.*, *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Circ. 2008); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016)). And Arreola-Martinez conceded this in response to the State's motion to dismiss.

But, in any event, Arreola-Martinez cannot prevail on her state wage claims under any set of facts because she was not an employee of the State. Under the MWA, "employ" means "to permit to work" and an "employee" is any person that is permitted to work by an employer, subject to certain exceptions. RCW 49.46.010(3), (4);[9] *see Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 867, 281 P.3d 289 (2012). Because the MWA definitions of "employ" and "employee" are "functionally identical" to the FLSA's definitions, we interpret the state and federal statutes in the same manner. *Anfinson*, 174 Wn.2d at 868. And while the WRA does not define "employ" or "employee," our Supreme Court has interpreted the act under the MWA. *See LaCoursiere v. Camwest Dev., Inc.*, 181 Wn.2d 734, 741-45, 339 P.3d 963 (2014).

In *Anfinson*, our Supreme Court held that the definition of "employee" in the MWA "incorporates the economic-dependence test developed by the federal

---

[9] *See also* former RCW 49.46.010(2), (3) (2023).

courts in interpreting the FLSA."[10]  174 Wn.2d at 871.  The economic-dependence test asks " 'whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for [themselves].' "  *Id.* (quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)).

In assessing whether a plaintiff is economically dependent on the defendant, our Supreme Court articulated a list of 13 nonexclusive factors that are most helpful to the question.  *Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 196-97, 332 P.3d 415 (2014) (citing *Torres-Lopez v. May,* 111 F.3d 633, 639-40 (9th Cir. 1997)).  These factors are:

> "[(1)] The nature and degree of control of the workers;
> [(2)] The degree of supervision, direct or indirect, of the work;
> [(3)] The power to determine the pay rates or the methods of payment of the workers;
> [(4)] The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; . . .
> [(5)] Preparation of payroll and the payment of wages;
> . . . .
> [(6)] [W]hether the work was a specialty job on the production line;
> [(7)] [W]hether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;
> [(8)] [W]hether the premises and equipment of the employer are used for the work;
> [(9)] [W]hether the employees had a business organization that could or did shift as a unit from one [worksite] to another;
> [(10)] [W]hether the work was piecework and not work that required initiative, judgment or foresight;

---

[10] Arreola-Martinez argues that the Supreme Court effectively overturned *Anfinson* in *Nwauzor*.  She is incorrect.  The court in *Nwauzor* interpreted two separate statutory exceptions to the definition of "employee," neither of which are relevant here.  2 Wn.3d at 514-16.  The court declined to apply the economic-dependence test where the defendant claimed that a statutory exception applied.  *Id.* at 523-24.  Here, the State does not argue that a statutory exception to the definition of "employee" applies, so *Nwauzor* is inapplicable.

[(11)] [W]hether the employee had an opportunity for profit or loss depending upon [the alleged employee's] managerial skill;
[(12)] [W]hether there was permanence [in] the working relationship; and
[(13)] [W]hether the service rendered is an integral part of the alleged employer's business."

*Id.*[11] (quoting *Torres-Lopez,* 111 F.3d at 639-40).

Arreola-Martinez's complaint alleges no facts to suggest that caring for her child during the COVID-19 pandemic made her economically dependent on the State. Indeed, most of Arreola-Martinez's complaint consists of legal conclusions that we need not accept as true. *Haberman*, 109 Wn.2d at 120. For example, she alleged that the governor's proclamations prohibited all K-12 children from attending school in-person for the 2020/2021 school year and instead mandated that they attend remote education. But the proclamations encouraged—not mandated—school districts to conduct remote learning for their students. *See* Proclamation No. 20.09.1, at 3 ("I strongly encourage school districts, and the exclusive representatives of school employees, to continue to work together to ensure distance learning opportunities for all students during the duration of the school closure.").

Arreola-Martinez also alleged in her complaint that the State "required the parents/guardians to work non-voluntarily without compensation in the capacity of school personnel" under "the coercive threat" of criminal and civil penalties. But Arreola-Martinez is simply rephrasing the legal definitions of "employ" and

---

[11] Some alterations in original, citations omitted, internal quotation marks omitted.

"employee."[12] And her claim misconstrues the Schools Proclamation. As previously noted, the Schools Proclamation did not direct parents of school children to perform any mandatory act or impose a "coercive threat" of criminal and civil penalties on parents.

Nor does the requirement under RCW 28A.225.010(1) that "[a]ll parents in this state of any child [8] years of age and under [18] years of age shall cause such child to attend the public school" constitute a "coercive threat" that, as Arreola-Martinez claims, "transformed her" into a school employee. RCW 28A.225.010(1) took effect long before the COVID-19 pandemic. Under Arreola-Martinez's interpretation of the law, every parent would become a school employee merely by driving their children to school or helping them with their homework. This is not, nor has it ever been, the law in Washington.

Arreola-Martinez's conclusory allegations articulate no facts that would satisfy any of the 13 *Becerra* factors. Because Arreola-Martinez was not an employee of the State, the trial court did not err in dismissing her MWA and WRA claims.

C. Takings Claim

Arreola-Martinez asserts that the trial court erred by dismissing her claim under the takings clauses of the state and federal constitutions. And she asserts alternatively that (1) the State exercised eminent domain by executing a per se

---

[12] Arreola-Martinez's use of the word "non-voluntarily" appears to be an attempt to preclude the State from claiming an exemption under RCW 49.46.010(4)(e). Under RCW 49.46.010(4)(e), "employee" does not include "[a]ny individual employed full time by any state or local governmental body or agency who provides voluntary services but only with regard to the provision of the voluntary services." *See also* former RCW 49.46.010(3)(e).

taking of her property and labor; (2) she had an implied contract with the State, and the use of her labor constituted an intangible taking; (3) by allowing a video recording device inside her home, the State took "100 percent of the right to exclude," which constitutes a physical regulatory taking; (4) loaning laptops to students constituted a physical invasion of private property; and (5) the State forced her to become a teacher's aide, which constitutes a regulatory taking.

We note initially that Arreola-Martinez first asserted her eminent domain theory in her CR 59 motion for reconsideration of the trial court's dismissal order. "CR 59 does not permit a plaintiff to propose new theories of the case that could have been raised before entry of an adverse decision." *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005) (citing *JDFJ Corp. v. Int'l Raceway, Inc.,* 97 Wn. App. 1, 7, 970 P.2d 343 (1999)). So, we decline to consider any of Arreola-Martinez's arguments related to eminent domain.

As to the rest of Arreola-Martinez's takings claims, "[b]oth the United States and the Washington Constitutions prohibit the taking of private property for public use without just compensation." *Wash. Food Indus. Ass'n & Maplebear, Inc. v. City of Seattle*, 1 Wn.3d 1, 30, 524 P.3d 181 (2023) (citing U.S. CONST. amend. V; WASH. CONST. art. I, § 16). Both constitutions contemplate two types of taking—direct appropriation or physical invasion of property and regulatory takings that "limit [a] property owner's lawful uses without physically appropriating land." *See id.*

There are two types of regulatory takings—per se and partial. *Wash. Food Indus.*, 1 Wn.3d at 32. Arreola-Martinez contends that she pleaded valid

claims for both per se and partial regulatory takings. A "per se" regulatory taking occurs when there has been a permanent physical invasion of property or when the owner has been completely deprived of *all* economically beneficial use of the property. *Id.* (quoting *Chong Yim v. City of Seattle*, 194 Wn.2d 651, 672, 451 P.3d 675 (2019)). "[A] partial taking is more nuanced and 'must be analyzed on a case-by-case basis according to the *Penn Central* . . . factors.' " *Id.* (quoting *Chong Yim*, 194 Wn.2d at 670 (citing *Penn Cent. Transp. Co. v. City of N.Y.*, 428 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978))).

Here, the trial court correctly found that there is no valid claim for a per se taking because Arreola-Martinez did not allege that there was any permanent physical invasion of property or that she had been completely deprived of all economically beneficial use of her property. Still, Arreola-Martinez argues that the State completely deprived her of her "right to exclude" and "physically invaded" her home when it lent her child a "government-owned" laptop. But, as the State notes, Arreola-Martinez cites no authority to support her assertions that the use of videoconferencing and the *receipt* of property from the State somehow constitute a taking. So, we need not address it. *See* RAP 10.3(a)(6) (appellant brief should include citations to legal authority); *see also Carter v. Dep't of Soc. & Health Servs.*, 26 Wn. App. 2d 299, 317, 526 P.3d 874 (2023) (When "a party cites no authorities supporting its argument, we may assume that counsel searched diligently and found none."). In any event, adopting Arreola-Martinez's argument leads to the absurd result that the government exercises a taking every

time it makes a phone call or sends a letter to someone's home. Such an interpretation would render the government unable to function.

Arreola-Martinez's arguments in support of her assertion that she was subject to a partial regulatory taking fare no better. Factors that courts consider in determining whether there has been a regulatory taking include the "economic impact of the regulation," the "extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action." *Penn Cent.*, 438 U.S. at 123-24. Arreola-Martinez's claim fails under this test.

The character of the governmental action at issue in this case supports the trial court's conclusion that no taking occurred here. As explained in *Penn Central*,

> [a] "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

438 U.S. at 124.[13] And the governmental action at issue here was a state-wide order designed to protect the health of the public.

The only monetary impact Arreola-Martinez asserts in her complaint concerns the cost of her labor. As explained above, Arreola-Martinez was not an employee of the State or entitled to wages for supervising her own child. Even if Arreola-Martinez had a valid claim for wages, "no statutory obligation to pay money, even where unchallenged, can create a property interest within the

---

[13] Internal citations omitted.

14

meaning of the Takings Clause." *Adams v. United States*, 391 F.3d 1212, 1225 (Fed. Cir. 2004) (obligation to pay overtime under the FLSA did not constitute a property interest subject to taking).

Arreola-Martinez argues that we should follow *DeLisio v. Alaska Superior Court*, 740 P.2d 437 (Alaska 1987), to hold that "labor is property"[14] and that any "damage[ ]" to one's labor constitutes a taking. First, *DeLisio* is an Alaska case interpreting the Alaska Constitution and not binding on this court. *See Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 884, 530 P.3d 236 (2023) (out-of-state authority not binding), *review denied*, 2 Wn.3d 1014, 540 P.3d 778 (2024). Second, Arreola-Martinez makes no valid claim that the State employed her labor. And third, for a valid takings claim to exist, the property in question must have been taken for *public use*. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005). There are no facts consistent with Arreola-Martinez's complaint that would show that the State took any of her property for a public use. Again, as the trial court correctly found, the only beneficiary of Arreola-Martinez's labor and use of her home in supervising her child was her child.

---

[14] Arreola-Martinez cites to *Jones v. Leslie*, 61 Wash. 107, 110, 112 P. 81 (1910), for her assertion that labor is property. But just because something is "property" does not mean that it is "private property" under the takings clause. *See Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1141 (9th Cir. 2024) ("With respect to claims arising under the Takings Clause, the phrase at issue—private property—is given a narrower meaning than in other legal contexts."). *Jones* was a case between two private parties for what we now consider as a claim for tortious interference with a business expectancy. 61 Wash. at 107-08 (plaintiff sued defendant for "blacklist[ing]" him with his employer and causing his unemployment). It did not concern the definition of "private property" under the takings clauses of the state and federal constitutions, so it has no relevance here. *See id.* at 110 (discussing whether "property" is "the right of employment in a laboring man").

The trial court did not err by dismissing Arreola-Martinez's claims under the takings clauses of the state and federal constitutions.

D.  Article IX, Section 1 Claim

It is unclear from Arreola-Martinez's brief whether she challenges the dismissal of her claim for damages, her claim for declaratory judgment, or both under article IX, section 1 of the Washington Constitution.[15]  In any event, Arreola-Martinez does not show that the trial court erred in dismissing her constitutional claims.

First, the trial court correctly dismissed Arreola-Martinez's claim for damages under article IX, section 1 of the Washington Constitution because it does not amount to a valid cause of action.  "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation.' " *Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001) (quoting *Sys. Amusement, Inc. v. State*, 7 Wn. App. 516, 517, 500 P.2d 1253 (1972)).  And Arreola-Martinez has not identified any augmentative legislation that would permit her claim.

The trial court also correctly dismissed Arreola-Martinez's claim for declaratory relief under article IX, section 1.  As the State argues, her claim is moot because the Schools Proclamation terminated in October 2022, over a year before Arreola-Martinez initiated her lawsuit.

_____

[15] Article I, section 1 provides, "It is the paramount duty of the state to make ample provision for the education of all children residing within its borders."

An issue is moot if it involves only abstract propositions or when a court can no longer provide effective relief. *West v. Walla Walla City Council*, 34 Wn. App. 2d 195, 206, 567 P.3d 634 (2025). Arreola-Martinez argues that her claim is not moot because the amount of money owed to parents under the Washington Constitution is an active controversy. But this argument conflates her damages claim with her claim for declaratory judgment. And Arreola-Martinez has no valid claim for damages under the Washington Constitution. Because there is no relief this court can provide, her declaratory judgment claim is moot.

The trial court did not err by dismissing Arreola-Martinez's state constitutional claims under article IX, section 1.

## 2. Leave To Amend

Arreola-Martinez challenges the trial court's denial of her request to amend her complaint a second time. We disagree.

We review a trial court's denial of a motion to amend a pleading for manifest abuse of discretion. *Del Guzzi Constr. Co. v. Global Nw. Ltd.,* 105 Wn.2d 878, 888, 719 P.2d 120 (1986). "Leave to amend should be freely given 'except where prejudice to the opposing party would result.' " *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987) (quoting *Caruso v. Loc. Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 100 Wn.2d 343, 349, 670 P.2d 240 (1983)). "In determining prejudice, a court may consider undue delay, unfair surprise, and futility of amendment." *R.N. v. Kiwanis Int'l*, 19 Wn. App. 2d 389, 416, 496 P.3d 748 (2021) (citing *Haselwood*

*v. Bremerton Ice Arena, Inc.*, 137 Wn. App. 872, 889, 155 P.3d 952 (2007), *aff'd*, 166 Wn.2d 489, 210 P.3d 308 (2009)).

Here, the trial court determined that all of Arreola-Martinez's proposed amendments would be futile and that she exercised undue delay in seeking to amend. It explained that the new claims Arreola-Martinez sought to add, including claims against local school districts, were all premised on her assertion that she was owed compensation for supervising her own child while the State suspended in-person learning. As discussed above, that assertion has no basis in law. The trial court did not abuse its discretion by denying Arreola-Martinez leave to amend her complaint.

We affirm the trial court's order dismissing Arreola-Martinez's complaint with prejudice and without leave to amend.

_____, ACJ

WE CONCUR:

_____          _____